Illinois Bell Telephone Company, Plaintiff-Appellant,
v. Charles Ind Company, Defendant-Appellee.

Gen. No. 10,696.

Opinion filed September 13, 1954. Released for publication September 29, 1954.

MILLER, THOMAS, HICKEY & COLLINS, of Rockford, and SIDLEY, AUSTIN, BURGESS & SMITH, of Chicago, for appellant; WILLIAM E. COLLINS, of Rockford, and JAMES E. BAKER and EMERSON T. CHANDLER, both of Chicago, of counsel.

KNIGHT, HAYE & KEEGAN, of Rockford, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

This action, brought to recover damages for injuries inflicted by defendant to plaintiff's underground telephone cable, was tried without a jury, by the circuit court of Winnebago county, resulting in a judgment for the defendant, and the plaintiff appeals.

The evidence disclosed that the plaintiff is a public utility engaged in the telephone business in Rockford, Illinois. On August 16, 1948, the Rockford City Council issued to it an ordinance permit granting to the plaintiff the right to place buried cable in the parkway along Rural Street in the City of Rockford. Pursuant to this authority, plaintiff placed a cable consisting of twelve hundred pairs of individual wires protected by insulation and a jute covering at a depth varying from thirty to thirty-six inches and maintained this cable in good condition.

Defendant is a corporation engaged in construction work of various kinds and has operated in Rockford for many years. In the summer of 1950 it operated six crews and was engaged to do certain work in connection with the laying out of a new addition north of Rural Street in Rockford. Its work, among other things, included the laying out and grading of streets and the installation of a sanitary sewer in Bohm Court, a street lying north of Rural Street. This storm sewer was to run from a manhole south of Rural Street in the parkway along the west curb of Bohm Street and to and across Rural Street. On and prior to September

15, 1950, defendant operated a ditch-digging excavating machine known as a "hoe." On the evening of September 15, 1950, it moved this hoe to a place near the manhole in Bohm Street and left it there overnight. Previous to this time and during the day of September 15, 1950, the city engineer's surveying crew of the City of Rockford placed engineering stakes in the parkway along Bohm Street indicating where the trench which defendant was to dig was to be dug, and on the stakes marks were placed indicating the depth at which the excavation was to be made. On September 16, 1950, defendant commenced the excavation, after breaking the cement around the manhole, and had proceeded about six hundred feet, following the grade lines and stakes, when the trench hoe came in contact with plaintiff's cable and inflicted the damage to recover for which this action was instituted.

The evidence further discloses that the plans for this storm-sewer excavation were drawn by the city engineer of Rockford and during the latter part of July 1950, were handed to Charles Ind, president of defendant company. This plan showed the line of excavation and the depth to which the trench was to be dug but did not show any telephone cable or conduit. It further appears that after the underground cable was installed by appellant in 1948 the parkway was filled and seeded to grass, and there was no evidence on the surface of the ground that would indicate there was any telephone cable below the surface. Emery McKinney, an employee of appellee, operated the trench hoe in making this excavation, and he testified that he noticed nothing which would indicate the location of this telephone cable. Charles G. Ind, Jr., was superintendent on this job for the defendant, but it appears that he died prior to the trial of this action.

The complaint in this cause was filed on March 12, 1952, and consisted of three counts. The first count is

based on the theory that the defendant was absolutely liable to the plaintiff and, as amended, alleged that the plaintiff was a public utility and on August 19, 1948, was granted written permission by the City of Rockford, as set forth in Ordinance Permit No. 50, to permanently place buried cables in a described parkway on the south side of Rural Street and in the vicinity of the intersection of Bohm Avenue and Rural Street in the City of Rockford, and that plaintiff, during the year 1949, installed a permanent 1212 pair, 24 gauge, jute-protected cable at the described location at a depth of approximately three and one-half feet under the ground surface. This count then alleged that defendant is a private corporation engaged in construction work and organized under the laws of Illinois; that it became its duty to refrain from using its excavating equipment in a manner which would injure or damage plaintiff's underground property as aforesaid; that disregarding its duty, defendant, while excavating a storm-sewer trench for and on behalf of the private owner of adjacent property, injured said cable, and as a direct and proximate result thereof, plaintiff sustained damage to the amount of $2,182.28, the actual cost to the plaintiff of repairing said cable.

Count two was in trespass *quare clausum fregit* and charged, among other things, that the defendant, with force and arms, on September 16, 1950, entered the close of the plaintiff and there operated a digging machine so as to cut and damage plaintiff's cable to the plaintiff's damage. The third count charged the defendant with negligence and, as amended, realleged the installation of this cable by the plaintiff, as set forth in the other counts. This count then averred that the plaintiff was at all times in the exercise of due care and caution for the safety of its property and charged that on September 16, 1950, defendant was engaged in excavating a storm-sewer

261

trench at the described location; that it thereupon became the duty of defendant to refrain from negligently injuring plaintiff's property; that defendant disregarded that duty and carelessly, negligently, and improperly operated its excavating machine over the area of plaintiff's cable after having knowledge of its presence, or without having ascertained from the office of the city engineer of Rockford the location of said cable, or without having ascertained from the local office of the plaintiff the location of said cable after having been notified by plaintiff in writing so to do, or that defendant failed to inspect the area to be excavated in order to determine the existence of said cable. This count then concludes that as a direct and proximate result of said negligent conduct on the part of the defendant, defendant, while excavating at the described location, operated its digging machine so as to damage the cable of the plaintiff.

The trial court sustained defendant's motion to dismiss counts one and two, and defendant filed an answer to count three and two affirmative defenses. The answer of the defendant to count three was a general denial of the allegations of that count. In the first affirmative defense, the defendant alleged that in doing the excavation work it did, defendant had permission to do so by the City of Rockford and that the city furnished defendant with a plat of the area upon which no underground cable or conduit was shown and that the excavation was made within stakes placed by the city officials. The second affirmative defense alleged a release of liability by reason of a credit memorandum and set forth that after September 16, 1950, the president of defendant company was repeatedly billed by the plaintiff in the amount of $2,182.28, said bill purporting to be based on a claim of the plaintiff for expenses incurred in making repairs to this damaged cable; that on March 21, 1952, defendant received

through the mail a credit memorandum issued by the plaintiff by which plaintiff credited the account of the defendant with the amount of $2,182.28. Plaintiff replied to these affirmative defenses denying the allegations of the first affirmative defense, and, as to the second affirmative defense, plaintiff averred that the credit memorandum was sent because of a mistake. Upon the issues thus made by the allegations of count three (the negligence count) and the answer thereto, a trial was had before the court without a jury. At the conclusion of the trial, the court found the defendant guilty of negligence in failing to ascertain the location of plaintiff's cable. The court also found that it was the duty of the plaintiff to inform defendant of the existence and location of its conduit and cable and also the duty of the plaintiff to check the records in the city engineer's office in order to determine whether a permit had been granted defendant to excavate at the place where plaintiff's conduit and cable were located. Failing to do this, the trial court concluded that plaintiff was guilty of contributory negligence which precluded a recovery and rendered the judgment which plaintiff seeks to reverse.

Counsel for both parties state that neither the Supreme nor any of the Appellate Courts of this State have heretofore considered the extent of liability of one, who, in excavating, damages the installations of another lawfully placed there prior to the excavation. Counsel for appellee insists that the only case directly in point is *Socony-Vacuum Oil Co., Inc. v. Bailey,* 109 N.Y.S.2d 799. This case involved injury to an oil pipeline laid pursuant to an easement from a private landowner under the surface of land used for pasture. The defendant had a contract with the owner to level the surface of the pasture and in doing so operated a bulldozer so that it came into contact with and broke a pipeline. A verdict in favor of the plaintiff was set

aside by the trial court and a judgment notwithstanding the verdict was rendered for the defendant. The Supreme Court of New York affirmed the judgment of the trial court and in its opinion said that the facts there were distinguishable from the facts in *New York Steam Co. v. Foundation Co.*, 195 N. Y. 43, 87 N. E. 765, 21 L.R.A.2d 470, and held that the plaintiff Socony-Vacuum Oil Company could not recover upon any theory other than that the defendant Bailey was negligent.

In *New York Steam Co. v. Foundation Co.*, 195 N. Y. 43, 87 N. E. 765, 21 L.R.A.2d 470, it appeared that the plaintiff, under a franchise from the City of New York, maintained an eight-inch underground iron pipe in the streets of New York for the purpose of supplying steam to its customers. The defendant was employed by the Commercial Cable Company to build an underground vault beneath the sidewalk in the street in front of the cable company's premises and was acting under a lawful permit issued by the city. In the course of its work the defendant drove sheet piling which caused the street to settle in places, injuring the pipe of the plaintiff and necessitating the replacement of a portion thereof. Thereafter the steam company brought its action against the construction company to recover the damages it sustained, and in the trial court the plaintiff obtained a judgment for $725. The appellate division reversed this judgment, holding that there could be no recovery without proof of negligence upon the part of the defendant. In reversing this judgment, the court of appeals stated that the case was one of first impression and could be decided only by resorting to those principles of the common law that apply most directly to the facts and which are best calculated to do justice to the parties. The court stated that the principles which it regarded as controlling are that no one can derogate from his own grant and that everyone

must so use his own property as not to injure that of another. The court then went on to say that while both parties to the action were lawfully in the street, the defendant owed the plaintiff a legal duty not to injure its property without making compensation; that the defendant could not disturb an existing structure lawfully in the street without becoming liable for the damages caused thereby. "Even the exercise of due care," continued the court, "did not relieve the defendant from the obligation springing out of the fundamental right of every person to enjoy his own property without interference therewith by the use made of the property of another. . . . Whoever undertakes a work, not on his own land, that will inevitably injure the property of another, subjects himself to liability for the damages inflicted. The defendant, a late comer in the street, and prosecuting a private enterprise, was properly held liable by the referee for the damages caused by its interference with the plant of a public service corporation already in the street with the sanction of law. The defendant took its license subject to the burden of paying for the injury caused by the work done thereunder. Any other rule might result in the utter destruction of public utility lines, without liability."

*Frontier Telephone Co. v. Hepp*, 66 Misc. 265, 121 N. Y. Supp. 460, was an action brought to recover the cost incurred in replacing cables injured when the defendant, while moving a house along Ellicott Street in Buffalo by the use of a capstan and tackle, drove an iron stake into the ground over an underground conduit of the plaintiff and so deep into the gravel that it penetrated the conduit injuring the cable therein. It appeared that the plaintiff operated a telephone system under a franchise granted by the city which gave it the right to lay its conduits in Ellicott Street. The defendant was a house mover and obtained from

265

the city the necessary permit to move the dwelling. The defendant contended that he was ignorant of the location of plaintiff's conduits and had no knowledge thereof, and if he was liable at all it would be on the ground of negligence. The trial court held, and its holding was approved by the Supreme Court, that the facts presented not a case of negligence but one of unlawful trespass and directed a verdict for the plaintiff. In the course of its opinion, the Supreme Court said: "The defendant had the undoubted right to move the building under the permit from the public authorities but that permit gave the defendant no right or authority to invade or injure the property of the plaintiff in so doing. In moving the house the defendant took the chances of possible injury to the property of others in so doing, and if he did so damage the property of another, he rendered himself liable under the decision in the case of New York Steam Co. v. Foundation Co., 195 N. Y. 43, 87 N. E. 765, 21 L.R.A. (N.S.) 470." In answer to defendant's contention that the plaintiff owed the defendant the duty to inform him of the location of its conduits and cables so that the defendant might avoid them, the court said: "The question is thus presented whether it was the duty of the plaintiff to inform the defendant of the location of its conduits or cables, or whether the law imposed the duty of ascertaining their location on the defendant. We have been cited no decisions on the question presented and we believe that its disposition must be largely one of first impressions. We are aware of no precise authority on the subject. We are, however, of the opinion that when one like the defendant uses the public streets of a city for his own private purposes, and goes beneath the street surface by excavation or otherwise, the duty rests upon him to fully inform himself as to what lies below, so that he may avoid injury to the property of the city or others rightfully there. The streets of a

266

modern city are so underlaid with pipes and conduits of various kinds necessary to the comfort and welfare of its citizens that one may be required to almost take judicial notice that in digging he may encounter some such pipe or conduit at any point in a street. We have sewers and water pipes, mains and laterals, steam heating pipes, gas pipes, electric lighting and power lines, telephone and telegraph wires and cables, and all with their necessary branches and connections for service to the abutting owners. When, therefore, one proposes using the public streets for his private purpose and proposes driving iron spuds or stakes below the surface, ordinary prudence and care dictate that he should inform himself of what lies beneath, so as to avoid injury to public property or the property of public service corporations. If he fails to do this, he drives his stakes or makes his excavations at his peril. If, the defendant," continued the court, "in driving his iron stake in moving his house, had driven them into a public sewer, would it have availed him, when called upon to make reparation, to have said he was moving the house by permit from the City Officials, and had no knowledge the sewer was beneath, and therefore the City was negligent in not advising him of its location? We think such a plea could not be entertained; and no less should the plea that the Frontier Telephone Company failed to notify the defendant that its conduits and cables were laid between the curb and the sidewalk. As we see it, it was the duty of the defendant to have informed himself of that location, and the plaintiff had the right to assume he had performed that duty for his own protection, and the telephone company cannot be charged with any failure to seek out the defendant and tell him where its cables were laid. Maps and plans showing the exact location of the plaintiff's conduits and cables as laid in Ellicott Street were on file in the City Engineer's Office, and all the infor-

mation required could have been obtained by consulting those maps. Notwithstanding, the defendant proceeded with his moving operations without any inquiry whatever, when it seems to the court if he had reflected he must have known that somewhere in that street telephone conduits existed."

*Frontier Telephone Co. v. Hepp, supra,* was cited and quoted from with approval by the Supreme Court of New Jersey in *Public Service Ry. Co. v. Mooney,* 99 N. J. L. 58, 125 Atl. 328. In the *Mooney* case it appeared that the defendant lawfully dug a trench three feet below the surface of Lakeside Avenue in Orange, New Jersey, for the purpose of installing a water pipe connecting an adjacent house to the water main. In doing so, he struck and pierced a concrete conduit containing electric wires belonging to the plaintiff. The electricity melted the lead pipe which the defendant laid next to the conduit, and water from the pipe short-circuited plaintiff's wires causing considerable damage. It further appeared that there was no plat on file of plaintiff's installations from which defendant could have ascertained the location of plaintiff's conduit. The trial court found insufficient facts, as a matter of law, to constitute actionable negligence and rendered judgment in favor of the defendant. In reversing that judgment, the Supreme Court of New Jersey said: "The defendant is a plumber and had a contract to install the water pipe. He was chargeable with knowledge of the fact that most of our public thoroughfares contain, beneath their surfaces, gas pipes, water pipes, conduits containing telegraph, telephone, trolley, electric light wires, etc. One cannot be permitted to shut his eyes to this condition and blindly go on and dig up a street without taking that degree of care necessary to refrain from interfering with and injuring the property of others. . . . Conduits are property subject to ownership and one wrongfully or negligently caus-

ing injury is liable. . . . If a private individual makes any excavation in the street, at least ordinary care is required that no injury shall be done to conduits."

*United Elec. Light Co. v. Deliso Const. Co.,* 315 Mass. 313, a Massachusetts case reported in 52 N.E.2d 553, was an action to recover for damages done by the defendant to plaintiff's conduit lines and manholes located underground in Columbus Avenue in the City of Springfield. Defendant was engaged in constructing a sewer tunnel under a written contract with the city, and, as the work progressed, steel plates were put in place and through holes in these plates, grout, a mixture of cement and water, was discharged through a nozzle under pressure for the purpose of forming a cement crust on the outside top of the tunnel. Some of this grout entered into the manholes and conduits of the plaintiff damaging them and necessitating the installation of new conduits. The declaration consisted of four counts, the first for negligence, the second for a nuisance, the third for the escape of a dangerous instrumentality and the fourth for trespass. The jury found for the defendant on the negligence count and the trial court directed a verdict for the defendant on the other three counts. In its opinion the Supreme Court stated that so far as count one was concerned the jury had settled the question of negligence and no exceptions had been taken thereto. The court affirmed the action of the trial court in directing a verdict on the third count but held that the trial court erred in directing verdicts in favor of the defendants upon the nuisance and trespass counts, being the second and fourth counts of the declaration. The court held that the plaintiff, without any proprietary interest in the land was the owner of the equipment, the conduit lines and manholes; that this equipment did not become a part of the realty but was

269

the personal property of the plaintiff which remained in its custody and possession. As to the trespass count the court said that a trespass requires an affirmative voluntary act upon the part of the wrongdoer and in that respect differs from negligence. The court went on to say that the record disclosed that the plaintiff was lawfully occupying a portion of the underground of the street by virtue of its permits: that the defendant was also lawfully occupying another portion of the underground area by virtue of its contract with the city: that there was no evidence that the construction of the sewer would necessarily result in damage to plaintiff's property: that the plaintiff's system had been installed years before the defendant began the construction of the sewer and that the plaintiff, so far as the defendant was concerned, was entitled to enjoy its property free from any damage caused by the negligence of the defendant and from any interference due to any trespass by the defendant: that there was no evidence that defendant intended to damage plaintiff's property and no evidence that the defendant knew at any time while the grout was being discharged that some of it was seeping into the manholes or conduits of the plaintiff: that the evidence did show that defendant intentionally released a substance which might lodge anywhere that the pressure at which it was discharged would carry it and that the defendant knew of the location of the plaintiff's conduits and that upon the evidence it could be found that the grout was driven into direct physical contact with a part of this underground system and did considerable damage which was the immediate and direct, rather than the remote and consequential, result of forcing the grout into the underground area. The court then concluded: "The defendant had no more right to injure this underground system because it was personal property than it would have had if it had become a part of the realty.

270

The plaintiff and the defendant were each lawfully occupying a portion of the underground area of a public way and the duties owed by one to the other were in the main no different than if they occupied adjoining parcels on the surface of the land."

*Cincinnati & Suburban Bell Tel. Co. v. Eadler*, 75 Ohio App. 258, decided by the Ohio court of appeals and reported in 61 N.E.2d 795, was an action by the Cincinnati and Suburban Bell Telephone Company to recover for damages to its equipment which it had installed under permission of the municipality beneath a sidewalk on Queen Avenue in the City of Cincinnati. It appeared that the equipment had been installed for the purpose of telephone and fire-alarm communication and was damaged by the defendant while excavating preparatory to erecting a building on an adjoining lot. In reversing the judgment of the trial court, the court of appeals stated that the conduits and cables enclosed thereby were possessed by the plaintiff and were the plaintiff's property rightfully located in the public street, serving a public purpose. The court said, "The law protects that possession and any invasion of it without just cause or excuse to its damage would create a liability in its favor without regard to whether the invasion was the result of an intentional act." The court cited 2 Restatement of Torts, 734, Sec. 281 and continued: "It serves no purpose to debate whether the act of the defendant causing the damage should be considered intentional or negligent. The removal of the lateral support and the subsoil was intentional and the recoverable damage is limited to such as directly resulted. A person is presumed to intend the natural consequences of his acts. Taking adequate measures to avoid the natural consequences would not have destroyed the intentional nature of the acts, but would have prevented the damage. Any less than adequate

271

measures to prevent the damage would have been immaterial or if it is preferred, negligence."

In *Allegheny County Light Co. v. Booth,* 216 Pa. 564, 66 Atl. 72, 9 L.R.A.2d 404 it was held that a property owner may be enjoined from excavating under a sidewalk adjoining his property in such a way as to interfere with electric conduits rightfully there, the court recognized that a public utility company, after contract from a city, has a right to use the streets in altering its distribution system.

*Edison Illuminating Co. v. Misch,* 200 Mich. 114, 166 N. W. 944 was an action by a public service corporation against a contractor to recover damages for injuries to its underground cables and conduits and for injuries to the mains of the Central Heating Company, plaintiff's assignor, caused by a cave-in of an excavation made by defendant. It appeared that this excavation extended out into an alley in the City of Detroit and as a result of the excavation into the alley, the alley wall of clay caved in, carrying with it the mains of the Central Heating Company and the conduits of the plaintiff. In affirming a judgment for the plaintiff the Supreme Court of Michigan said: "We are clearly of the opinion that the defendant had no right to interfere with any structures rightfully in the alley. That the mains and conduits in question had been lawfully and properly placed in the alley by authority of the City is, we think, too clear for controversy. The defendant made excavation into the alley at its peril. If he did not have from the surrounding objects and monuments sufficient to put him upon notice of the presence of the mains and conduits, there was at least sufficient evidence to warrant the submission of that question to the jury, which was done by the trial court. The plaintiff and its grantor were by their mains and conduits, rightfully first in the alley, and their rights were entitled to protection by defendant in such occupancy."

272

Referring to the plaintiff and its assignor, Central Heating Company as being engaged in furnishing a public service, the court then said: "Their rights under their respective franchises were in the nature of continuing easements, prior to the rights of the defendant in the alley. He (the defendant) had no right to make any use of the alley which would interfere with existing proper public uses thereof."

In *Bell Telephone Co. of Pennsylvania v. Baltimore & O. R. Co.*, 155 Pa. Super. 286, 38 A.2d 732 it appeared that the Railroad Company and the predecessor of Bell Telephone Company entered into an agreement under the terms of which the Railroad Company gave the Telephone Company a license or permit to maintain manholes and underground conduits on one of its station sites, while the license was still in force the Railroad Company leased a part of the station site to Gravity Fill Service Station, Inc., with leave to install underground tanks, pumps, pipe and other equipment necessary to the operation of a filling station. In the course of the excavation for the installation of its underground equipment the contractor of the Service Station caused substantial damage to the conduits of the Telephone Company to recover for which the Telephone Company instituted an action in assumpsit against the Railroad Company and the Service Station. In affirming a judgment in favor of the plaintiff and against both defendants the court stated that a license does not confer a right of possession sufficient to support an action of trespass *quare clausum fregit* or of ejectment but that a licensee may maintain an action of trespass in the nature of common-law case for any invasion or disturbance of the terms of the license whether by the licensor or by third parties. The court then went on to say that it thought the action was properly brought in assumpsit though sounding in tort but that the court preferred to rest its decision

273

on a broader ground. The court then called attention to the fact that by rule of the Supreme Court of the United States distinctions between the separate forms of civil actions have been completely abolished in the federal courts and said that the only functions of a pleading are to put the other party on notice of what the pleader intends to prove at the trial and to define the issues and that when the facts ultimately proved are properly alleged and there has been a trial on the merits, pleadings are not of much, if any, account.

The finding of the trial court that plaintiff was guilty of contributory negligence which precluded a recovery in the instant case because the plaintiff was charged with knowledge that sewers were being dug, excavations made and streets repaired and that therefore it was the duty of the plaintiff to let defendant know where its underground cables were located is not sustained by the authorities. The weight of the evidence in our opinion discloses that plaintiff was in the exercise of due care for the safety of its own property. Counsel for appellee insists that the facts in the several cases referred to herein are distinguishable from the facts in the instant case in that in some of the cases the right of the plaintiff to use the underground portion of a street or parkway was spoken of as a franchise, a license or a grant while the interest which a public utility has in a public street by reason of a grant from a municipality in Illinois is a license. The argument made is not persuasive. The utility takes from the municipality a possessory or proprietary interest which is protected from invasion or damage by subsequent users. This is illustrated in *Milwaukee Elec. Railway & Light Co. v. City of Milwaukee,* 209 Wis. 656, a Wisconsin case reported in 245 N. W. 856, where the city was compelled to compensate the utility for forcing it to relocate its underground conduits.

274

Under the authorities, it was the duty of the defendant to inform itself of the location of plaintiff's property, and the plaintiff cannot be held contributorily negligent as a legal proposition because it did not seek out the defendant and inform it where its conduit and cables were located, nor was it the duty of the plaintiff to check the records of the municipality to ascertain to whom permission had been given to excavate at the place where plaintiff had buried its conduits and cables.

Furthermore, Rector Egeland, plaintiff's district plant engineer who was in charge of underground cable installations of the plaintiff testified that a couple of weeks before September 16, 1950 he observed defendant's crew working north of the intersection of Bohm and Rural Streets and Egeland inquired of defendant's foreman to what extent defendant planned to excavate and was told by the foreman that the excavations would not go south past the middle of Rural Street and that the storm sewer would go north from Rural Street into the subdivision. It is true Egeland did not remember the name of the foreman but his testimony is that he told the foreman at that time that the plaintiff had a cable on the south side of Rural Street. Mr. Egeland further testified that prior to September 16, 1950 he had had approximately fifty conversations with Mr. Ind, president of defendant, about excavations made by defendant through or near the underground installations of plaintiff. He further testified that in June 1948 plaintiff sent a letter to Mr. Chas. Ind and to all contractors in the Rockford area requesting the contractors to notify the plaintiff of any contemplated work which might bring them in contact with plaintiff's plant and suggesting that such contractors examine underground locality maps or plats which were on file in its offices and in various public offices showing the

locations of plaintiff's installations and suggesting that reference be made to these plats during excavations. This letter further stated that the telephone company maintained a twenty-four hour service, where this information could be secured and stating that a telephone call, giving the telephone numbers, was all that was necessary and that the telephone company would arrange to have a representative locate its underground plant on the ground and furnish such assistance as is necessary in order to assure that no damage is done. Mr. Ind, president of defendant company, testified he did not receive this letter but did recall that he had contacted the telephone company about various jobs at different times but not about the instant one. Mr. Ind further testified that prior to September 16, 1950 he had never seen a plat showing the underground installations of plaintiff but that he "had heard of the existence of plats showing the phone cables, which plats were filed with the Sanitary District Office, the City Engineer's Office, the Water Office, the County Superintendant of Highways and the Rockford Township Superintendent of Highways. I don't know exactly" continued this witness, "when I first knew of their existence. I don't think I knew anything to speak of about any plats before September 1950." Then, referring to the location where this cable of the plaintiff was damaged, Mr. Ind testified: "I checked the locality thoroughly before I started on the job. We always check the terrain or the street as to what objects would be in the way. We do not always check for telephone or electrical underground installations. . . . I don't remember whether I called the telephone company about the possibility of any cable being in that particular street but I did call them about jobs we had in process. We generally, before we started a job, called the telephone company both before and after 1950."

276

During the trial, an engineer employed by the city, John Frankenberg, testified on behalf of the plaintiff and was asked if from July to September 1950, there was in the office of the city engineer records showing the underground installations of appellant. Upon an objection being interposed, the court inquired the purpose of the offered testimony. Counsel for the plaintiff then stated that a copy of the plat showing such installations was on file in the city engineer's office and that one of the issues was whether defendant, had failed to ascertain the existence of this underground cable. Thereupon, the court said: "Suppose it was. That doesn't bind Ind unless he saw it. This man made a print and he didn't include the telephone cable. That is not Ind's fault. That is the engineer's fault. You mean to tell me the City Engineer isn't under any duty to notify and give information about cables, sewers, waterpipes, and things like that when an excavator goes in and asks for a plat?" To which counsel for the plaintiff responded: "No. The excavator determines the existence of the utility installations, the telephone installation from the telephone company and the city engineer's office gives information merely on the sewer and water. I would like to put it in the case to show that is the case." The court then said: "That isn't the case. If he didn't put it in there, that is his shortcoming. If you can connect Ind up with some particular plat that was in the office of the city engineer, that he looked at or was called to his attention, that is a different proposition but not with this plat."

The record does disclose that there was on file in the city engineer's office of the City of Rockford on and for a long time prior to September 16, 1950 a plat showing the location of plaintiff's underground cables: that when new installations were made, a new plat or map was prepared and filed in the office of the city engineer and the previous plat or map withdrawn. The plat

277

which defendant used in making the excavations it did for the storm sewer on September 16, 1950 was prepared by the office of the city engineer of Rockford for Rosenquist and Schanacker owners of the subdivision by whom defendant was employed and this plat shows that this storm sewer which defendant was excavating was an integral part of the construction work defendant was doing for the subdividers in connection with the laying out of their subdivision.

In the instant case defendant had a right to excavate where it did in constructing a storm sewer for its employer. Plaintiff, at that time, enjoyed a possessory or proprietary interest, granted it by the city in the portion of the street where defendant was excavating. The permit from the city gave defendant no right to interfere with this interest and when its excavating hoe struck and damaged plaintiff's cable defendant committed a trespass for which it became liable.

It is finally insisted by appellee that plaintiff's claim was extinguished by the credit memorandum sent defendant by the plaintiff on March 18, 1952. What the record discloses is that shortly after September 16, 1950, plaintiff sent a bill to the defendant for the expense incurred in repairing its damaged cable. One of these bills was dated April 23, 1951 another was dated May 8, 1951, and another August 7, 1951. These bills were on plaintiff's Form No. 4157A, refer to bill No. PU. 4081 and are addressed to Mr. Charles G. Ind, Point Avenue, Rockford, Illinois, and are substantially as follows: "Expense incurred in making the necessary repairs to our equipment on or about September 16, 1950, in parkway on Rural Street at intersection of Bohm Avenue, Rockford, Illinois, as the result of being struck by equipment belonging to you. Material (1212 pair cables, sleeves and solder) $294.54. Labor, (815 hours) excavating, removing damaged cables, placing splicing and testing new cables, back filling $1752.36.

Motor vehicle service, (135⅓ hours) $135.38. Total. $2182.28." On March 18, 1952, the plaintiff sent to the defendant a credit memorandum reciting: "We credit your account with the following: To cancel our bill PU. 4081, dated April 23, 1951, for the cost of repairing and replacing a section of our company's 1212 pair buried cable at Rural Street and Bohm Avenue, Rockford, Illinois, which was damaged by your workmen while excavating for sewer work on September 16, 1950. Work completed September 26, 1950. Total $2182.28."

Philip L. O'Brien testified in connection with this phase of the case to the effect that he had been employed by the plaintiff for 39 years and at the time he testified he was disbursement accounting supervisor of the plaintiff and supervised the preparation of bills for work performed in the area including Rockford. He outlined the bookkeeping and accounting procedures of the plaintiff, and stated that this credit memorandum was prepared in his office: that there was a mistake in connection with this bill and that it was not intended by the company that this credit memorandum should be sent to the defendant. He further testified that the defendant never paid the plaintiff any portion of the amount due the plaintiff aggregating $2,182.28 as evidenced by the invoices sent by the plaintiff to the defendant and that this amount is currently carried on the books of the plaintiff as an indebtedness from the defendant to the plaintiff. This witness explained in detail what the credit memorandum was intended to do and that delivery of it by mail to the defendant was unintentional and made through a clerical error. Defendant admits it never paid to the plaintiff or any one else any portion of this bill and is unable to explain why it was ever sent by the plaintiff to the defendant.

■■ The trial court stated that this memorandum operated as a release of defendant's indebtedness to

279

the plaintiff. Whether an instrument is an effective release depends upon the intention of the parties. (*Parmelee v. Lawrence*, 44 Ill. 405; *Esser v. Community Consolidated School Dist. 62*, 335 Ill. App. 199; *Giers v. Atchison, T. & S. F. R. Co.*, 349 Ill. App. 169.) This credit memorandum was never intended to operate as a release. It was executed without any consideration and came into the hands of the defendant by a clerical error and mistake on the part of the plaintiff. It was never intended to operate as a release by either of the parties to this action. It might not be amiss to note that the instant complaint was filed March 12, 1952, six days prior to the time defendant received this credit memorandum thru the mails.

Under the authorities cited and the evidence found in this record the trial court erred in not rendering judgment in favor of the plaintiff and for this error the judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*