**BRADFORD BUILDERS, INC.,**
Appellant,

v.

**SEARS, ROEBUCK & CO., Appellee.**

No. 17479.

United States Court of Appeals
Fifth Circuit.

Oct. 6, 1959.

Rehearing Denied Nov. 4, 1959.

**650**

Herbert L. Nadeau, Miami, Fla., Anderson & Nadeau, Miami, Fla., for appellant.

Edward J. Atkin, John H. Wahl, Jr., Phillip W. Knight, Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, Fla., for appellee.

Before RIVES, Chief Judge, TUTTLE, Circuit Judge, and SIMPSON, District Judge.

SIMPSON, District Judge.

Bradford Builders, Inc. (hereinafter Bradford) a general contractor, had a contract with the Dade County Board of Public Instruction for the erection of a school building. The plans and specifications called for the enclosure of the property by a wire fence, supported by metal posts, set in concrete. On July 5, 1956, Sears, Roebuck & Co. (hereinafter Sears) entered into a sub-contract with Bradford to erect the fence. The sub-contract contained an agreement for the sub-contractor not to sublet any portion of the work, except with the contractor's written consent.

Prior thereto, on March 8, 1956, Sears had entered into a general contract with one Jack Wilson, under which Wilson agreed, for a three year term, to accept all jobs for the installation of fence materials tendered him by Sears. Wilson's contract with Sears contained a typical broad indemnity agreement to save Sears harmless from any claim, demand or suit against it by reason of any negligence, alleged negligence or breach of contract arising directly or indirectly from any act in connection with any installation or job undertaken pursuant to the contract. This Wilson contract was in force during the pertinent period.

Sears tendered the Bradford job to Wilson, with Bradford's Superintendent, Ginder's, knowledge [1] and Wilson agreed in writing to do the job, this agreement again indemnifying Sears.

1. Bradford's witness, Ginder, testified that this came about through his first contacting Wilson, who had, as a representative of another concern (Hurricane Fence

Bradford's engineer, Ginder, furnished a voluminous and complete set of plans and specifications to Wilson for examination. The fence line location was shown with exactitude only on the "Plot Plan", Sheet A-1, of the plans. It was necessary to follow this drawing to determine exact location and distances of the fence, which were not shown in detail elsewhere. The fence was installed by Wilson at the location shown on the Plot Plan. A separate sheet of the plans, Sheet M-1, showed the location of a power pole outside the property limits, with a primary electric cable running underground from this pole to a transformer vault attached to the main building. Wilson examined this sheet, along with the others submitted, noted that the underground cable shown thereon was close to and diagonal to the fence line but did not touch the fence line (shown thereon but not in detail). He gave this sheet of the plans no further attention.

In digging a post-hole for the fence, Wilson broke through the concrete conduit and cut the cable. He completed the fence installation. Bradford incurred an expense of $3169.46 in repairing and replacing the primary cable and conduit.

Bradford brought this suit against Sears in the state court, on two counts, the first for negligence in performance of the work, the second for breach of contract in procuring Wilson to do the work. Sears timely removed the case to the District Court on grounds of diversity of citizenship and requisite amount in controversy. (Title 28 U.S.C. §§ 1441(a) and 1332.) Sears defended on the following grounds: (1) Denial of negligence; (2) Acquiescence by Bradford in Sears' employment of Wilson to perform the work and a resulting waiver and estoppel; (3) That Wilson was an independent contractor; and (4) That by furnishing a blue-print differing from existing conditions, Bradford "proxi-

mately caused or contributed to and assumed the risk of any damage it may have sustained."

Sears brought Wilson in by third-party complaint based upon the indemnity provisions of its contract with Wilson. Wilson's answer to the third-party complaint denied negligence and also pleaded Bradford's deviation from the plans. His answer demanded trial by jury.

Later, Sears was given leave to file and filed a compulsory counterclaim against Bradford for the contract price of installing the fence, $1,768. In this pleading Sears also demanded a jury trial. Bradford's answer to the counterclaim admitted that it had not paid the contract price, asserted that it was willing to give Sears credit therefor, denied performance of the contract and re-averred negligence on the part of Wilson as Sears' agent.

After pre-trial conference, the order upon which indicated that the case was to be tried to a jury, the case was tried before a jury upon the issues above set forth.

At the conclusion of the evidence the District Judge withdrew the issues raised by Bradford's breach of contract count from the jury and submitted the case between Bradford and Sears upon the issues of negligence and contributory negligence, and also submitted the issues between Sears and Wilson, to the jury. It was stated in the Court's charge that the counterclaim for the performance of the work, in the amount of $1,768 was admitted by Bradford. The jury found for Sears and against Bradford on Bradford's claim, found against Bradford on the counterclaim in the amount of $1,768, and as they were instructed to do in the event that Sears prevailed on the main suit, found for Wilson with respect to Sears' third-party complaint for indemnification.

Co.), erected fences on a number of other Bradford jobs. Wilson informed Ginder that he was no longer with Hurricane, but was now with Sears, and that Sears could give him a cheaper price for fencing than Hurricane. Ginder invited Wilson

in to inspect plans, and he came with a Sears representative. That day, or soon after, they offered a satisfactory price, and the subcontract was entered into between Sears and Wilson, at a price of $1,768.

■ From the final judgment consequent upon this verdict, Bradford entered this appeal, strenuously asserting six grounds upon which we are asked to reverse the judgment for new trial.[2]

For the reasons hereinafter set forth, we affirm the District Court.

■ Bradford's first question raises the propriety of the case being tried to a jury when neither of the original parties asked for jury trial in their original pleadings, the only such demand being present in Wilson's answer, and in Sears' counterclaim. As pointed out, the pretrial order clearly contemplated a jury trial. Appellant's brief asserts that objection to trial before a jury was made when the case was called for trial, but admits that the transcript brought here records no such objections. The brief points out that objections were made by the motion for new trial and statement of points. Of course, without a record to sustain such objections, they were of no avail in the motion for new trial or in the statement of points. It would be entirely consistent from this record to conclude that Bradford's counsel acquiesced in the trial of all contested issues before a jury and first objected after a jury verdict adverse to their client. If the reporter's record was deficient in this respect, it was counsel's duty to supply the omission, by calling upon the court reporter to transcribe the colloquy, by affidavit of some person present when the

colloquy occurred, or in some other fashion. As the matter stands, we agree with appellee's counsel that Bradford is "flying blind" as to this point.

■ Additionally, timely demand having been made for jury trial at least as to the issues between Sears and Wilson, we are of the plain view that the discretionary power to order trial by jury of any or all issues is plainly conferred by Rule 39(b), F.R.Civ.P. If there was not sufficient compliance with Rule 38, F.R.Civ.P., the trial Court's denial of Bradford's post-trial motions (see Footnote 2) indicates the District Court's view that the jury's conclusions were correct. In considering these motions the District Court had the benefit of Rule 61, F.R.Civ.P., with respect to harmless error. We are unable to find demonstrated prejudicial error in the action of the District Court in the submission of all issues to the jury.

■ The second question raised by Bradford is whether or not the District Court erred in granting Sears' motion for a directed verdict as to the cause of action for breach of contract, in the procuring of Wilson to install the fence. At this point in the proceedings, the evidence showed without dispute, by the testimony of Jerry Ginder, Bradford's construction engineer, the only employee who testified in Bradford's behalf, that Bradford, through Ginder, originally contacted Wilson to have him erect the fence, that

**2.** The transcript brought here contains post-trial motions for new trial and for judgment n. o. v. (filed June 19, 1958, the day following the entry of final judgment on June 18), but does not contain any order thereon by the trial Court. Notice of Appeal was filed July 29, 1958, and the appellant Bradford's designation of the contents of record on appeal and its statement of points (Rule 75(a) and (d), F.R.Civ.P., 28 U.S.C.) were filed the same day. The designation omits reference to an order denying these motions, but No. 13 of the Statement of Points is as follows: "The Court erred in making and entering the Order of July 3rd, 1958, denying Plaintiff's Motion for New Trial and for Judgment Non Obstante Verdicto (sic)".

Obviously, without the latter order of July 3, the appeal was not timely entered before more than 30 days after the final judgment (See Rule 73(a), F.R.Civ.P.) The parties, in their briefs and arguments, take no notice of the deficiency in the record, and we assume that the omission of the order of July 3 could be supplied under Rule 75(h), F.R.Civ.P. It is evident that both motions were denied, and this opinion will treat the appeal as though the order of July 3, 1958 appeared in the record. In a word, we will treat that as done which ought to have been done, simply pointing out the omission as an admonition to counsel to be diligent and vigilant in the presentation of the proper record on appeal.

Bradford knew Wilson was to do the work and was satisfied to have him do it, that Bradford accepted the fence as erected, that Bradford turned the fence over to the School Board and that the School Board and its architect accepted and approved the fence. The colloquy between Court and counsel at the time this issue was taken from the jury is reproduced in the margin.[3] The issues of negligence and contributory negligence with respect to the injury to the underground conduit and cable were left for the jury's consideration. On the entire theory upon which Bradford's case was tried, the trial Court was justified in instructing a verdict against Bradford as to the breach of contract count.

■■■■ The refusal of the District Court to direct a verdict against Sears, either at the conclusion of Sears' case, or at the conclusion of the entire case, is the basis of Bradford's third question. While it is true that Sears introduced no evidence directly refuting the testimony of Ginder, Bradford's engineer, and that by denying Sears' motion at the close of the plaintiff's case as to the issue of negligence, the District Judge had thus indicated that to his mind Bradford had made out a prima facie case in chief, it is by no means a corollary that the absence of contradictory testimony in Sears' case required the granting of Bradford's motion when Sears rested. It is hornbook law that evidence coming from witnesses on the opposite side (as well as from its own witnesses) is available to any party to a law suit. Ginder's testimony with respect to the several plans examined by Wilson, the discrepancies thereon, and as to what was done by Wilson, his confused and confusing attempts to demonstrate what had occurred by means of the various plans and diagrams in evidence, all abundantly demonstrated that there were then present factual questions as to negligence, contribu-

3. "The Court: Well, Mr. Nadeau, the evidence up to this point shows that you have got the fence put up and the fence was approved, so your witness said: So you have gotten the fence in in what appears to be a workmanlike manner. Now, what you really are contending for, isn't it, that in the doing of this some injury was caused, and that that was due, not to a violation of a contract, but an action as the result of negligence?

"Mr. Nadeau: But, your Honor, our position with respect to that is this: If the plans and specifications, such as these, show the possibility of a conduit running in that area. As Justice Terrell said in another case, 'The flags were flying,' and they had a duty to ascertain the location of that, instead of going in there just willynilly and using crowbars and pounding through four inches of concrete conduit. That certainly is not evidence of workmanlike performance of a contract, when they were on warning. And, I submit, your Honor, this case that I sent in with my instructions, the duty is upon them to ascertain whether or not—

"The Court: Oh, I am not disputing it. I don't know the case that you are citing. Was that a contract or a tort case?

"Mr. Nadeau: Almost identical to this, sir.

"The Court: But what was that, a tort case?

"Mr. Nadeau: It was a combination of both.

"The Court: The remaining first count here—all that you said relates to the remaining count. I am not ruling against you in any respect about duties and breaches of duties, as far as that is concerned. What I am considering is that from the testimony of your witness, you got a fence put up which was approved. You didn't even prove in your case that it was put up by anybody except Sears, Roebuck, so that you don't even prove breach of the contract as alleged in Count 2.

"So I don't see that there is anything to worry about. The only thing I am considering is, if we hadn't disposed of it before, that if it is a contention of yours that Count 2 is a breach of contract, you have not proved anything in that respect. You might have proved that you were entitled to have it put up by Sears, Roebuck, and it was put up by Wilson; but you didn't choose to do it that way. You chose to do it by having it put up by Sears, Roebuck.

"I think I am right, as far as that. Now, as far as the question of whether there is sufficient evidence here to go to the jury on negligence, I am holding that there is."

tory negligence, and proximate cause. The confusion in this respect was in no way alleviated by Sears' case, and an additional factual issue had emerged: whether or not Sears did the work through Wilson as its agent, (as Bradford contended) and that Sears was, therefore, liable for Wilson's alleged negligence, or as an independent contractor (as Sears contended and offered testimony to prove, which Bradford sought to impeach by the use of Wilson's pre-trial deposition). All these factual questions were still present when Wilson rested his case and the motion was again denied. Properly, we think, the District Court submitted these disputed issues of fact to the jury. We have examined the case of Illinois Bell Telephone Co. v. Charles Ind. Co., 3 Ill.App.2d 258, 121 N.E.2d 600, and the other authorities cited in Bradford's brief. They are not apposite here.

■ The fourth question raised by Bradford is the giving of instructions by the District Judge which permitted the jury to find Bradford guilty of contributory negligence and which inferentially encouraged that finding.[4] The contributory negligence relied upon was the furnishing of the Plot Plan, A-1, to Sears and Wilson, which directed the location at which the fence was to be installed, the production of the electrical plan, M-1, showing the cable at one location, and the installation of the cable at a different location, without notice to Sears and Wilson. Whether or not this had occurred, and whether or not it was the proximate cause of the breaking of the conduit and the cutting of the cable by Wilson were issues which had been raised by the testimony of Ginder and of Wilson. It was the duty of the trial Court to instruct the jury as to this issue and error is not made to appear in respect of his instructions.

■ By its fifth question, Bradford asserts that the District Court erred in refusing to give Bradford's requested instructions, Nos. 1, 2 and 3, which are set out in the margin.[5] The purport of these instructions, if given, would have been to exonerate Bradford from any responsibility for furnishing a misleading or defective plan to Wilson. Ginder, Bradford's construction engineer, fur-

---

4. Waiver and estoppel had been pleaded by Sears as a defense to the breach of contract cause of action. As noted, the trial Court had correctly withdrawn the breach of contract count from the jury's consideration, so that in defining the issues to the jury it was necessary to advise the jury that although Sears had pleaded affirmative defenses of waiver, estoppel and contributory negligence, waiver and estoppel were removed from their consideration and the question of contributory negligence remained. Bradford contends here that by this instruction the District Court inferentially told the jury that there was evidence of contributory negligence. Waiver and estoppel had been discussed in the jury's presence during the trial and it was necessary for the trial Judge to tell the jury that these issues were no longer present and to disregard them. We can find no error in the manner in which the District Judge did so.

5. "1. Where a sub-contractor undertakes to do work in accordance with the specified plans and specifications, it is the duty of such sub-contractor, before undertaking the work, to make himself fully aware of what is required by the plans and specifications, and if he fails to make himself thoroughly familiar with such plans and specifications, and as a consequence of such unfamiliarity with either the plans, specifications or the site of the work, and damage results, the sub-contractor is liable to the person so damaged."

"2. A sub-contractor engaged in any installation which requires excavation below the earth's surface has a duty to inform himself as to the location of underground cables and conduits, and if he fails to inform himself as to the existence of such underground conduits and cables, and in the course of digging the conduits and cables are damaged, the sub-contractor is liable for the damage suffered."

"3. There is no duty upon the general contractor to inform a sub-contractor as to the location of underground conduits and cables. Such a duty rested upon the sub-contractor, and if you find that the sub-contractor failed to make the necessary investigation or inquiry as to the location of such conduits or cables, and damage resulted in the course of the excavating operations, the sub-contractor is liable therefor."

nished the plot plan which Wilson, without dispute, followed without deviation in placing the fence. In response to a question by the Court, Ginder said "The plot plan is the part that would take precedence on the fences. The other sheets are just supplementary sheets." Bradford, through Ginder, exhibited the plot plan to Wilson as the plan he was to follow, and he did so. The action of the electrical subcontractor in following some other plan subordinate to the plot plan which was the blueprint quoting Ginder "taking precedence on the fences" was the responsibility of Bradford, not of Wilson. Bradford was not entitled to the requested charges which would have allowed it to disclaim responsibility for the result.

We consider that the following statement by the Supreme Court in United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 61, 63 L.Ed. 166, aptly sets forth the governing principle of law as to this contention:

> " * * * if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications. Mac-Knight Flintic Stone Co. v. The Mayor, 160 N.Y. 72, 54 N.E. 661; Filbert v. City of Philadelphia, 181 Pa. 530, 37 A. 545; Bentley v. State, 73 Wis. 416, 41 N.W. 338. See Sundstrom v. State, 213 N.Y. 68, 106 N.E. 924. This responsibility of the owner is not overcome by the usual clauses requiring builders to visit the site, to check the plans, and to inform themselves of the requirements of the work, as is shown by Christie v. United States, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933, Hollerbach v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898, and United States v. Utah, Nevada & California Stage Co., 199 U.S. 414, 424, 26 S.Ct. 69, 50 L.Ed. 251, 252, 255, where it was held that the contractor should be relieved, if he was misled by erroneous statements in the specifications.

" * * * the insertion of the articles prescribing the character, dimensions and location of the sewer imported a warranty that if the specifications were complied with, the sewer would be adequate. This implied warranty is not overcome by the general clauses requiring the contractor to examine the site, to check up the plans, and to assume responsibility for the work until completion and acceptance."