## FRONTIER TELEPHONE CO. v. HEPP.

### (Supreme Court, Trial Term, Erie County. February 26, 1910.)

1. TELEGRAPHS AND TELEPHONES (§ 19*)—USE OF STREETS—TELEPHONE CON-
DUITS—INJURY BY HOUSE MOVER—TRESPASS.

    A telephone company placing, by virtue of a city franchise, conduits to
carry its wires under the street between the curb and the sidewalk, has
a property right therein, and where a house mover, under permit from the
city to move a house, drives a stake into the ground, whereby the wires
in the conduit are damaged, it is an unlawful trespass for which the
mover is liable, irrespective of negligence, since the right of occupation
of the telephone company was prior, permanent, and a semipublic right,
while the right of the mover was temporary and a purely private right.

    [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§ 12; Dec. Dig. § 19.*]

2. TELEGRAPHS AND TELEPHONES (§ 19*)—INJURY TO UNDERGROUND WIRES—
LIABILITY OF HOUSE MOVER—DEFENSES.

    A telephone company had the franchise right to lay conduits under a
street. A house mover, under permit of the city to move a house, con-
sulted the telephone company about lifting and cutting overhead wires,
and telephonemen went over the route. The company gave a receipt to
the mover, reciting the receipt of $75 to cover expenses of "changing the
wires or other property" of the company. The mover damaged the con-
duits by driving a stake into the ground. Held, that the receipt and oral
negotiations, being confined to overhead wires, did not affect the liability
of the mover as for an unlawful trespass in damaging the conduits.

    [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§ 12; Dec. Dig. § 19.*]

3. TELEGRAPHS AND TELEPHONES (§ 19*)—UNDERGROUND WIRES—RIGHTS OF
HOUSE MOVER—INJURIES TO CONDUITS—DUTY OF TELEPHONE COMPANY.

    A telephone company, having conduits under the streets which are dam-
aged by the driving of a stake by a house mover, is under no duty to in-
form the mover of the location of its underground wires, though it had
knowledge of the moving, went over the route which was to be taken, and
contracted to remove all overhead wires which were in the way, since
modern streets are so underlaid with pipes and conduits of various kinds
necessary to the welfare of the citizens that it was more the duty of the
mover to inform himself, as he could have done by consulting maps in the
city engineer's office, of the exact location of all underground conduits
of the company, and the fact that the conduits were between the curb
and the sidewalk would make no difference.

    [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§ 12; Dec. Dig. § 19.*]

4. TELEGRAPHS AND TELEPHONES (§ 19*) — TELEPHONE COMPANY — NOTICE TO
AGENT—INJURIES TO TELEPHONE WIRES.

    Where a house mover commits an unlawful trespass on the property
right of a telephone company which had conduits under a street, by
driving a stake into the ground, whereby the conduits were injured, the
mover cannot escape liability by showing that linemen sent out by the
telephone company, which was under contract with the mover to move
overhead wires, saw that he was driving stakes and did not notify him of
the existence of underground conduits, since notice to the linemen was not
notice to the company.

    [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig.
§ 12; Dec. Dig. § 19.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Action by the Frontier Telephone Company against Henry C. Hepp. Motion for new trial after a direction of a verdict in favor of plain-tiff. Motion denied.

Frank H. Gibbons and John F. Mueller, for the motion.
Charles F. Blair and Howard S. Jones, opposed.

WHEELER, J. The material facts in this case are undisputed. The plaintiff, a public service corporation operating a telephone system in the city of Buffalo, under a franchise granted to it by the city of Buffalo, by which it was given the right to string its wires and lay its conduits in the public streets of the city, had laid and constructed con-duits containing telephone cables in Ellicott street, in this city. At the point where the damage complained of occurred, the conduits were laid about two feet below the surface of the ground, between the curb and the sidewalk, along the westerly side of Ellicott street. The con-duit consisted of seven hollow tiles laid in cement, and through these tile were drawn large cables containing wires used in the company's service.

The defendant was a house mover, and desired to move a frame dwelling from a lot on Best street, in this city, to a lot on Girard street. To move the house, the route was along and over a portion of Ellicott street. The defendant applied to the common council of the city, and obtained from it, and the other city officials, the necessary permit to move the dwelling.

The Frontier Telephone Company, in addition to the underground conduits mentioned, also had overhead wires strung at various points along the route which it became necessary to cut or lift in order to en-able the house to pass.

The defendant informed the telephone company of his desire to move the house over the route in question and to provide for the re-moval of the overhead wires. The plaintiff sent its inspector, who went over the proposed route with the defendant and observed the overhead wires that would have to be cut or lifted. He made a report to his company, and thereupon the following receipt was signed by the company and given the defendant:

"This is to certify that I have received from H. C. Hepp of 274 Cedar St., the sum of seventy-five ($75) dollars on deposit to cover expense of changing the wires or other property of this company to permit moving house from 122 Best St., to Girard nr. Delavan. Mr. Hepp hereby agrees to pay any expense-incurred over the above deposit and to give 24 hours' notice previous to moving said house.
"The Frontier Telephone Company, By Raymond Bissell, Treas."

Thereupon the moving of the house began, and linemen were sent by the plaintiff to lift or cut the overhead wires when required. The house was moved by the use of a capstan and tackle. In so doing, workmen engaged on the job drove an iron spud or stake into the ground over the underground conduits, and so deep into the ground that it penetrated the conduits and so injured two of the cables that they were put out of commission, and it became necessary to remove the cables and replace them with others.

This action is brought to recover the necessary cost incurred in replacing the cables in question, and is based upon an allegation of an unlawful trespass upon the plaintiff's property. The complaint also contained an allegation of negligence on the part of the defendant.

The defendant contends he was ignorant of the location of the conduits in question, and had no knowledge that any such underground conduits were laid in this street, and that the plaintiff wholly failed to inform him of that fact, and that, if the defendant is liable at all under the circumstances of the case, he can only be held liable on the ground of negligence, and whether he was, in fact, guilty of negligence, was a question of fact to be submitted to and found by the jury under proper instructions by the court. The court, however, held that, upon the evidence, the case presented was not one of negligence, but one of unlawful trespass, and directed a verdict for the plaintiff for the damage sustained. Whereupon defendant's counsel moves for a new trial on the ground of alleged error by the court in thus disposing of the case.

We think the court was right in the rulings made, and that the law as laid down in the recent decision of the Court of Appeals in the case of New York Steam Company v. Foundation Co., 195 N. Y. 43, 87 N. E. 765, 21 L. R. A. (N. S.) 470, is controlling in the disposition of this case. In the case cited, the New York Steam Company was a corporation organized for the purpose of furnishing steam for heating and power purposes through pipes laid in the streets of the city of New York, and the defendant was engaged in the business of constructing foundations and retaining walls in that city. The steam company was acting under a franchise granted by the city. The defendant was acting under a permit, subsequently granted, to construct a vault in front of certain premises in the city, but "in no case to extend beyond the line of the curbstone or sidewalk." In constructing the vault, and without any negligence on its part, it damaged the pipes of the plaintiff under the street. It was held that both parties were lawfully in the street, but the occupation by the plaintiff was prior, permanent, and for a semipublic purpose, while that of the defendant was subsequent, temporary, and for a purely private purpose; that the steam company had an indestructible property right in the street, which grant the city could not derogate, and that whoever undertook work not on his own land which would injure the property of another subjected himself to liability for the damages inflicted, and became liable for the damages caused by the interference with the plaintiff's plant already there with the sanction of law. The court further said that:

"Even the exercise of due care did not relieve the defendant from the obligation springing out of the fundamental right of every person to enjoy his own property without interference therewith by the use made of the property of another."

It is, however, contended in this case that the paper given the defendant by the plaintiff, above set forth, whereby the plaintiff acknowledges the receipt of a deposit of $75 "to cover the expense of changing the wires or other property" of the plaintiff, amounted in effect to license or consent on the part of the plaintiff to the moving of the

house, and that, having so consented, the defendant is only liable for negligence in the performance of the work.

We must assume, as the evidence discloses, that the plaintiff knew that the defendant proposed moving the house over the route designated, and we may also assume that the plaintiff undertook to cut or lift its overhead wires where necessary, in order to enable the house to pass over the route in question. There was nothing in the receipt or in the evidence of the oral negotiations which preceded the payment of the deposit or the giving of the paper, whereby the plaintiff assented or agreed to do anything more than to cut or lift the overhead wires. That was all that the situation required. Not a word was said about moving or protecting the plaintiff's underground conduits or cables. At most, the paper is simply a receipt for a deposit, with the possible agreement on the part of the defendant to pay any additional sum if the expense of changing the wires should exceed the deposit. It is absurd to contend that this paper obligated the plaintiff to change or protect its underground conduits or cables. Nothing was said or written in reference to them.

The defendant had the undoubted right to move the building under the permit from the public authorities, but that permit gave the defendant no right or authority to invade or injure the property of the plaintiff in so doing. In moving the house, the defendant took the chances of possible injury to the property of others in so doing, and, if he did so damage the property of another, he rendered himself liable under the decision in the case of New York Steam Co. v. Foundation Co., 195 N. Y. 43, 87 N. E. 765, 21 L. R. A. (N. S.) 470.

The Court of Appeals commends the able opinion written by the referee on the decision of that case, in which the referee, referring to the right of lateral support of adjacent properties under private ownership, applies the doctrine to the rights of others in streets, and says:

"The obligation undoubtedly includes the duty of supporting all pipes, mains, and other structures lawfully placed thereon. As this duty rests on the individual who owns abutting property, I can see no reason why he should be relieved from a similar obligation, when for his own private ends, but under a permit from the city authorities, he enters upon and excavates the highway itself. To hold that, under such circumstances, he is not bound to make good such damage as he may inflict upon a public service corporation owning property rights in the street under a grant from the city, would involve the further conclusion that he is not liable (in the absence of contract) to the city itself, even though he destroy the highway." N. Y. Steam Co. v. Foundation Co., 123 App. Div. 266, 108 N. Y. Supp. 84.

It is urged by the able counsel for the defendant that the defendant was ignorant that any conduits had been laid in Ellicott street, and had no knowledge of their location, and that, inasmuch as the plaintiff knew he contemplated moving the house along that street, it owed him the duty to inform him of the location of its conduits and cables, that he might avoid them; that the plaintiff failed to do this, and this omission to perform a duty owing the defendant contributed to or caused the spiking of the cables. It is contended these facts distinguish this case from the case of N. Y. Steam Company v. Foundation Co., 195 N. Y. 43, 87 N. E. 765, 21 L. R. A. (N. S.) 470. It is therefore

urged that the defendant should have been permitted at least to have gone to the jury on the question as to whether or not this omission to inform defendant of the location of the conduits contributed to their injury, and, if so, precluded a recovery.

The question is thus presented whether it was the duty of the plaintiff to inform the defendant of the location of its conduits or cables, or whether the law imposed the duty of ascertaining their location on the defendant. We have been cited no decisions on the question presented, and we believe that its disposition must be largely one of first impressions. We are aware of no precise authority on the subject. We are, however, of the opinion that when one like the defendant uses the public streets of a city for his own private purposes, and goes beneath the street surface by excavation or otherwise, the duty rests upon him to fully inform himself as to what lies below, so that he may avoid injury to the property of the city or others rightfully there. The streets of a modern city are so underlaid with pipes and conduits of various kinds necessary to the comfort and welfare of its citizens that one may be required to almost take judicial notice that in digging he may encounter some such pipe or conduit at any point in a street. We have sewers and water pipes, mains and laterals, steam heating pipes, gas pipes, electric lighting and power lines, telephone and telegraph wires and cables, and all with their necessary branches and connections for service to the abutting owners. When, therefore, one proposes using the public streets for his private purpose, and proposes driving iron spuds or stakes below the surface, ordinary prudence and care dictate that he should inform himself of what lies beneath, so as to avoid injury to public property, or the property of public service corporations. If he fails to do this, he drives his stakes or makes his excavations at his peril. If the defendant, in driving his iron stakes in moving his house, had driven them into a public sewer, would it have availed him, when called upon to make reparation, to have said he was moving the house by permit from the city officials, and had no knowledge the sewer was beneath, and, therefore, the city was negligent in not advising him of its location? We think such a plea could not be entertained; and no less should the plea that the Frontier Telephone Company failed to notify the defendant that its conduits and cables were laid between the curb and the sidewalk. As we see it, it was the duty of the defendant to have informed himself of that location, and the plaintiff had the right to assume he had performed that duty for his own protection, and the telephone company cannot be charged with any failure to seek out the defendant and tell him where its cables were laid. Maps and plans showing the exact location of the plaintiff's conduits and cables, as laid in Ellicott street, were on file in the city engineer's office, and all the information required could have been obtained by consulting those maps. The defendant could have acquired the same information from the maps kept at the plaintiff's office. Notwithstanding, the defendant proceeded with his moving operations without any inquiry whatever, when it seems to the court if he had reflected he must have known that somewhere in that street telephone conduits existed. The plaintiff did not know the defendant

proposed driving iron stakes over its conduits.   It was not at all necessary to have done so in moving.

It is further urged that the linemen sent out by the plaintiff to cut or lift the overhead wires saw the defendant's men driving stakes about where the break occurred, and it is argued that therefore the plaintiff had notice of what the defendant was doing, and should have spoken. Notice to these linemen was not notice to the company.   The linemen were sent simply to cut or lift the overhead wires.   That was the extent of the duty they had to perform.   There is no suggestion in the evidence that these men had anything to do with the underground conduits or cables, or even knew where they were laid.   The fact that they may have seen men driving spuds into the ground between the curb and sidewalk cannot, in our opinion, be deemed sufficient evidence of notice to the plaintiff of what the defendant was doing.

We therefore conclude that no error was committed by the trial court in directing a verdict for the plaintiff, and defendant's motion for a new trial is therefore denied.

So ordered.