PIONEER NATURAL GAS CO., Petitioner,

v.

K & M PAVING CO., Respondent.

No. A–9247.

Supreme Court of Texas.

Dec. 4, 1963.

Gibson, Ochsner, Harlan, Kinney & Morris, Max R. Sherman, of the firm, K. Bert Watson, Amarillo, for petitioner.

Key, Carr, Carr & Clark, Aubrey J. Fouts, of the firm, Lubbock, for respondent.

GREENHILL, Justice.

This is a suit by K & M Paving Company against Pioneer Natural Gas Company for the loss of an earth moving machine by explosion and fire as a result of the machine's cutting one of the Pioneer Natural Gas Company's buried pipelines on the outskirts of Lubbock, Texas. In the district court, the jury verdict and judgment was for the plaintiff in the amount of $12,500. The Court of Civil Appeals affirmed. Tex.Civ. App., 359 S.W.2d 533.

Article 1436b, Vernon's Texas Civil Statutes Annotated, authorizes gas transmission companies to lay and maintain lines under public roads and highways of Texas, and this pipeline was laid in accordance with that statute. The statute prescribes minimum heights for power lines, but it does not prescribe depths for pipelines. The State Highway Commission may, if it so desires, designate the place where the pipes or fixtures shall be laid; but it did not do so. And it may require the company, at the company's expense, to relocate any lines or fixtures to permit the widening or changing of traffic lanes by giving 30 days' written notice to the company. And it may specify the pipes or items to be moved and the place to which they shall be moved. As will be discussed later, the Highway Department did notify Pioneer that work would be done on that highway; but Pioneer was not directed, under the statute, to move or relocate any of its lines.

In 1956, pursuant to the statute, Pioneer filed notice with the district office of the Texas Highway Department in Lubbock that it was going to lay this 3-inch pipeline in the right-of-way of U. S. Highway 62. The line was to be used to distribute gas to customers as contrasted with a transmission

line. Plats were filed with the department in its Lubbock office, showing the location of the line. At the time the pipes and other equipment were installed, the area was outside the City of Lubbock. At the time of the accident, the area had been taken into the city, though the road was still a part of a state highway and federal highway system.

The ditch or trench for the pipeline was dug in 1956 by L. P. Harris, an independent contractor. He testified that his ditching machine cut to the full depth of 48 inches for the laying of the line. J. H. Hord, Pioneer's construction engineer, testified that Pioneer, when the pipe was laid, maintained at least a 36-inch ditch in the vicinity of the accident. George Kirchoff, Pioneer's division engineer, testified that Pioneer's instructions were to have at least 30 inches of cover for the line; that Pioneer paid Harris for the laying of the line at least 30 inches below the surface. There was no evidence that it was laid at a lesser depth. There was no testimony from any witness, lay or expert, that the line was laid to an insufficient depth or what a proper depth would be. There was testimony that the line might not have been cut if there had been a casing. But there was no testimony that the line should have been encased or what a proper casing would have been.

About December 13, 1957, Pioneer received from the Texas Highway Department a letter stating that it was in the process of planning improvements to four different highways in Lubbock County. The letter contained no right-of-way specifications or any notice of the date when the construction might begin. The letter did say that detailed maps and right-of-way requirements would be furnished Pioneer at a later date. About January 6, 1958, Pioneer received from the Texas Highway Department a transmittal letter to which was attached preliminary right-of-way maps for two projects on U. S. Highway 62. The maps did not show specific requirements for right-of-way, nor did the letter direct Pioneer to move or lower any of its lines or other facilities.

On January 30, 1959, James C. Kerr, President of Kerr Paving Company and of K & M Paving Company, entered a contract with the Texas Highway Department to improve and widen four miles of U. S. Highway 62 in Lubbock County, Texas. Kerr assigned the contract to the Kerr Paving Company. We shall refer to Respondent herein as Kerr or K & M. As part of the construction, Kerr used a large earth scraper, owned by K & M, which had its own motor and was also pushed by a caterpillar tractor to cut down the grade of the road. The scraper, which weighed 26,000 pounds, and tractor had a combined power of 230 horse power. While engaged in this scraping, the scraper struck Pioneer's gas pipeline.

In its operation, the scraper cut several inches off the surface on each pass, and the pipe was struck on the third or fourth time the scraper passed over this particular area. There was an explosion and a fire, which destroyed the scraper.

At the time the machine struck the pipeline, the pipeline was buried at a depth of approximately two feet. Kerr's foreman, Joe Cope, testified that he took an elevation at the point, and that the pipe was 24 inches below the surface when struck. Other witnesses for Kerr testified that the pipe was 15 to 18 inches below the surface when it was struck. When the pipe was laid, the road was unpaved. Prior to the present road work, there had been other road work which apparently had cut some of the covering from over the pipeline. At the point where the machine struck the pipeline in the highway right-of-way, the pipeline was laid in a zig-zag pattern, as shown on the plat filed with the Highway Department. The pipe when struck was at the place where it was shown to be on the plat.

Kerr stated that he proceeded to do the cutting and scraping on the assumption that

the area was clear of obstructions and that all gas lines were visibly marked. He testified, over objection, that there was a custom of the Highway Department to notify all parties, including utilities, to move their obstruction from the highway; and that usually the utilities would move or lower their lines or would notify the contractor of anything in the way. He looked for written warning signs though there were meters, which he saw, all up and down the highway, adjacent to buildings but off of the right-of-way.

Joe Cope, [plaintiff's] Kerr's foreman, testified that he saw the meters which were along the highway but not on the right-of-way, and a Christmas tree or large gas regulator across the street which indicated to him that there might be a line along the road. He and the Highway Department Engineer noticed the regulator and other gas company equipment, "and so we discussed should we call the gas company. * * *" It was decided that no call should be made because there was not any indication [to him] that "the [gas] line would be going that way." He assumed that the line was off of the right-of-way and that it went directly from the regulator to a large meter off of the right-of-way in a straight line. The problem as to the zigzag course of the pipeline at this point is relevant to the question as to whether Kerr was contributorily negligent in failing to correctly ascertain the path of the line. Under our disposition of the case, it is unnecessary to pass on that point.

Like Kerr, Cope said he worked on the assumption that the right-of-way had been cleared or that he would be notified. He conceded that he had made mistakes, and that he definitely made a mistake in this instance.

As stated, there were along the pipeline right-of-way no signs stating a pipeline was there, but there were adjacent to the right-of-way many gas meters, gauges, and regulators. These various pipeline apparatus were clearly visible to the men working on

the road. Immediately across the intersection from the accident was a large regulator or Christmas tree, plainly visible, which Kerr's men had inspected in an attempt to estimate the path and depth of the pipeline.

Kerr had not requested plats from either the Highway Department or from Pioneer showing the location of the pipeline. Neither the Highway Department nor Pioneer volunteered information or warning to Mr. Kerr of the path of the pipeline.

A month earlier, while working at the Slide Road intersection a mile east of the point where the accident occurred, Kerr's foreman had talked with Pioneer's Division Engineer, George Kirchoff. Kirchoff, at that time, had come out to the job site to help locate a gas pipeline located at that point of the construction job. These facts will be discussed more fully later in this opinion.

The jury's findings are set out below. Some of the inquiries were phrased negatively, and the answers are set out as they were made. The jury found Pioneer was negligent in the following respects: in failing to have the pipe buried deeper than it was; in failing to have the line encased in a protecting conductor pipe; in failing to notify the employees of Kerr of the location of the line in question; in failing to mark the pipeline at the place in question; and that each of these acts or omissions was a proximate cause of plaintiff's damage. The jury found that the failure of Pioneer's engineer, Kirchoff, to disclose the location of the line in question when he was at Slide Road and U. S. Highway 62 [approximately a mile from the scene of the accident] was negligence and a proximate cause; that Kirchoff did not reasonably believe that the conversation related to lines in that area [only]; that Kerr's foreman, Cope, did not make his only investigation of the location of the lines after he discovered the presence of the regulator; that Cope did discover a gas installation in the vicinity of the accident prior to the accident; that he did dis-

cover a regulator of the gas company there before the accident; that after considering calling the gas company, he did not make a decision to not call the gas company and find out the exact location of the gas line; that after discovery of the gas regulator, he failed to find out from Pioneer where their lines were located, but that this was not negligence.

The jury further found that plaintiff was operating its earth-moving equipment at the time and place in question without having first found out from Pioneer where its lines were, but this was not negligence; that plaintiff Kerr, before the accident, at the time and place in question, found out, or by the use of ordinary care could have found out, from the Highway Department that Pioneer had a line at that location; but that it was not negligence for plaintiff to continue to work at that location after having found out or having failed to find out. It found further that after discovering the regulator, Cope did not know that there was a gas line crossing the road in that vicinity; that Cope did not assume the risks; that the situation was not open and obvious; and that the occurrence was not an unavoidable accident.

Pioneer's approach in its application for writ of error is a little unusual in that it does not have points of error that the particular findings of the jury are not supported by evidence. That is, it does not have points that there is no evidence to support the jury's finding that Pioneer buried the pipe an insufficient depth, failed to encase it, and failed to mark it. Nor does it

have a point which says, in so many words, that there was no evidence that these acts or omissions constituted negligence. Rather its points are that it cannot be held liable for the destruction of K & M's scraper because it breached no duty which it owed to K & M; that K & M was a trespasser to its pipeline and therefore Pioneer owed a duty only not to injure K & M through gross negligence, or through willful or wanton conduct. Finally, Pioneer asserts that K & M was guilty of contributory negligence as a matter of law.

 In the construction and maintenance of the pipeline, Pioneer has a duty of ordinary care to protect people and property in the vicinity of the line from the types of harm ordinarily resulting from a gas pipeline. Thus they have a duty to properly install their lines and to avoid dangers from occurrences such as leaks and breaks in the pipe which could result from others making ordinary use of the surface. There may be other circumstances, not present here, in which additional duties or immunities have been imposed upon or granted to the pipeline operator by contract, oil and gas lease, statute,[1] administrative regulation, or ordinance. While under the statute the Highway Department had the authority to require Pioneer to move its line, it did not do so.

We regard the accident occurring here as resulting from an extraordinary use of the surface by K & M, and not falling within those cases involving an ordinary use of the surface. As above stated, the undisputed evidence is that the line was buried.

1. While Article 1436a particularly describes heights for power lines, Article 1436b does not prescribe depths for pipelines along or under highways. Article 6020, dealing with regulation of pipeline companies, also authorizes the laying of pipeline under highways if the prescribed consent is obtained. But it prescribes no depths for lines. Article 1497, dealing with the powers of pipeline corporations, prescribed a minimum depth of 20 inches under cultivated or improved land. This statute was in effect when the accident occurred but is now repealed by Article 9.16, subd. B of the Texas Business Corporation Code. It was repealed as of September 6, 1960, 5 years after the effective date of the Code on September 6, 1955. Long after the accident here, the Texas Highway Department in June, 1963, adopted a "Utility Policy" which deals with the depth, casing, and marking of pipelines in and under highways. All statutes referred to herein are Vernon's Texas Civil Statutes Annotated.

to such an extent that it took three or four passes of powerful digging or scraping machines to unearth the pipe.

Under these circumstances, the question is whether it is the duty of the pipeline company to continuously police its lines to keep others from interfering with them or being injured by them; or whether it is the duty of persons who do make an unusual or extraordinary use of the surface to find out where the lines are, and then either (1) avoid them or (2) request their relocation or that they be deactivated during operations, or to make reasonable inquiry so that it then becomes the duty of the pipeline company to make a disclosure of the location of its lines so that the other party may avoid striking the line.

Some of the cases dealing with the digging up of pipelines in streets have talked in terms of trespass to an easement or trespass to chattels, and this is one of Pioneer's points. Thus in Mountain States Tel. & Tel. Co. v. Vowell Construction Co., 161 Tex. 432, 341 S.W.2d 148 (1960), this Court held Vowell guilty of trespass to the buried telephone cable. But the fact was in Vowell that the construction company which dug up the street had actual knowledge of the presence of the cable in the right-of-way. Here K & M did not, but the jury found that it could have ascertained the pipeline's location by ordinary inquiry from the Highway Department there in Lubbock. The question of constructive knowledge or duty-to-know in trespass to chattels is a field of the law which is both difficult and unsettled.[2] As this opinion is written, we do not reach the trespass question.

As to the duty of the person who digs up or encounters the line, foreseeability has

also been considered an element. It has made a difference whether a line was encountered in an open rural field or whether it was dug up in a city street.

We think it sound, in the light of the cases hereinafter discussed, to hold that at least where the activity is in an urban street or road, and where an unusual or extraordinary use of the surface is necessary to unearth the pipeline, and where there is no contract, statute, ordinance, or regulation governing the matter, the initial burden is upon the one who excavates or digs up the surface to avoid striking the line or to make reasonable inquiry as to the location of any lines which might be encountered. The duty of the pipeline operator under these circumstances arises, then, when it is requested to alter its lines or their use, when it is asked for information, or when it is otherwise put on such notice that it is required to take particular action to protect the lives or property of others.

Obviously Kerr did not avoid striking the line. The question then is whether Kerr took such steps as to give rise to a duty on Pioneer's part to point out its lines or otherwise protect them.

Following the requirement of the statute and perhaps foreseeing that excavation might later take place in the street or road, Pioneer filed with the Highway Department in its Lubbock office plats showing the location of the line in question. The jury answered that Kerr, by the use of ordinary care, could have found out the location of the line from the Highway Department, and that Kerr operated his machinery in the vicinity of the line without having found out from Pioneer where they

**2.** Compare Frontier Tel. Co. v. Hepp, 66 Misc. 265, 121 N.Y.S. 460 (Sup.Ct., 1910) which says that streets are so underlaid with pipes and conduits that one may almost take judicial knowledge that the digger may encounter some pipe or conduit in a street, and Illinois Bell Tel. Co. v. Chas. Ind. Co., 3 Ill.App.2d 258, 121

N.E.2d 600 (1954), with Socony-Vacuum Oil Co. v. Bailey, 202 Misc. 364, 109 N.Y.S.2d 799 (1952). Restatement of Torts § 218 (1934); 33 Rocky Mt. Law Rev. 323 (1961); 1 Harper & James, The Law of Torts, § 2.5 (1956); Prosser, Torts 64 (2d ed. 1955).

were. The jury found these acts did not constitute contributory negligence, and Pioneer contends that they constitute contributory negligence as a matter of law. Our view is that these findings determine that Kerr did not take such steps as to give rise to a duty on Pioneer's part. We shall refer to an inquiry made by Kerr's foreman, Cope, of Pioneer's supervisor, Kirchoff, later herein.

In Willmar Gas Co. v. Duininck (1953), 239 Minn. 173, 58 N.W.2d 197, the defendants dug up the gas company's line in excavating a street. The company had maps available for inspection showing the location of its lines, but defendant had never asked to see them. In holding that the trial court correctly refused to submit the question of the company's negligence to the jury, the court held:

"Under these circumstances it would be unreasonable to charge plaintiff with the duty of constantly watching the operations over which it had no control to ascertain, at its peril, when defendants intended to proceed with such work as might damage its service lines. Rather, the duty should rest upon defendants to notify plaintiff when they intended to proceed with the work and to ascertain whether service lines of plaintiff were located in such places that they might be damaged if defendants proceeded with the work. * * * It would place an unreasonable burden upon plaintiff were we to require it to follow all stages of a street improvement project and to constantly follow the equipment of a contractor doing such work to see that none of its lines were damaged."

In Frontier Telephone Co. v. Hepp, 66 Misc. 265, 121 N.Y.S. 460 (1910), the defendant was moving a house through the streets. The telephone company had agreed to move its wires above the ground along the route and had men along the way for such purpose. The house was being moved at the point in question by driving stakes into the ground and using a capstan and tackle. One of the stakes was driven into two underground telephone cables. The defendant argued that it had no knowledge of the location of the lines and that the telephone company should have warned the plaintiff of its cables. The court observed that it was almost required to take judicial knowledge that streets are underlaid with cables and conduits, and that the duty rested on one excavating the streets to inform himself: " * * * the duty rests upon him to fully inform himself as to what lies below, so that he may avoid injury to the property of the city or others rightfully there." The Court continued:

"As we see it, it was the duty of the defendant to have informed himself of that location, and the plaintiff had the right to assume he had performed that duty for his own protection, and the telephone company cannot be charged with any failure to seek out the defendant and tell him where its cables were laid. Maps and plans showing the exact location of the plaintiff's conduits and cables, as laid in Ellicott street, were on file in the city engineer's office, and all the information required could have been obtained by consulting those maps. The defendant could have acquired the same information from the maps kept at the plaintiff's office. Notwithstanding, the defendant proceeded with his moving operations without any inquiry whatever, when it seems to the court if he had reflected he must have known that somewhere in that street telephone conduits existed."

Many of the cases are summarized in Illinois Bell Telephone Co. v. Chas. Ind Co., (1954), 3 Ill.App.2d 258, 121 N.E.2d 600. The defendant was there engaged in grading streets and installing sewers. The City's engineers had marked the stakes and depth of excavations. The plaintiff telephone company had previously laid cables in the parkways along the streets. The City's plans furnished defendant did not show plaintiff's lines, and defendant's em-

ployee operating the digging device said he saw nothing to call his attention to the presence of plaintiff's buried cables. No actual knowledge of the cable was shown. Plats showing the location of the lines were on file at the company's office which defendant and others had been invited to consult, and also at the office of the City Engineer. Defendant denied receiving the invitation. The trial court, sitting without a jury, found the telephone company to be contributorily negligent in failing to inform defendant of the location of its underground cables. The appellate court reversed saying that as a matter of law, the phone company was not guilty of contributory negligence. While the decision ultimately turned on trespass to the telephone lines based on charged or constructive knowledge (and it was held that there was a trespass), the court said:

> "Under the authorities, it was the duty of the defendant to inform itself of the location of plaintiff's property, and the plaintiff cannot be held contributorily negligent as a legal proposition because it did not seek out the defendant and inform it where its conduit and cables were located, * * *."

This Court cited and followed the above Ind case in Mountain States Tel. & Tel. Co. v. Vowell Construction Co., 161 Tex. 432, 341 S.W.2d 148 (1960).

Of interest is Young v. Herrington, 312 S.W.2d 685 (Tex.Civ.App.1958, no writ). The Texas Court of Civil Appeals there said that in the absence of contractual agreement in the pipeline easement, the owner of the pipeline owed no duty to bury the pipe to any particular depth or to mark the line. But when the landowner called to the attention of the pipeline owner that a hazardous condition existed because of anticipated land-clearing operations, and the pipeline owner agreed to bury the line below plow depth but failed to do so, it was held that a duty and a cause of action for negligence arose to a third party (the plaintiff) who was injured when his bulldozer struck a line buried only a few inches.

Kerr contends, however, that it did call on Pioneer to point out its lines at this location. Kerr points out that its foreman, Cope, did make inquiry of Pioneer's supervisor, Kirchoff, at the Slide Road intersection a month or so before the accident. Kerr's position is that this inquiry did give rise to a duty on Pioneer's part to point out the line at the intersection where the accident occurred, and that Pioneer, through its agent, Kirchoff, violated that duty.

There was testimony that Kirchoff had driven up and down the "Brownfield Highway" (the road or street in question) during the construction. He had "just driven up and down the road" and had been on it in connection with other duties, such as getting new customers for the company. In so doing he had observed the work in progress. The entire highway project extended to the Hockley County line. He knew Pioneer had lines in the road under permits from the Highway Department, including some near the town of Wolfforth. He had seen the heavy earth-moving equipment on both sides of the highway and the installation of curbs and gutters. His position was that he could not follow contractors around and tell them not to dig too deep at any one place; that he was glad to furnish information upon request as to Pioneer's lines and had done so on many occasions to others as he did for Mr. Cope at the Slide Road intersection. For the company's information, Kirchoff had drawn onto a map of the highway or street some of Pioneer's lines which were in the highway including the one in question. He said this was done in case Pioneer found it necessary to adjust its lines or was requested by the Highway Department to move or lower the lines. It was not established when this map work was done by Kirchoff. Pioneer had received the general map of the over-all project well over a year before the accident.

It is necessary here to summarize the testimony of Cope and Kirchoff. Cope testified that on this same street or highway project, Kerr was putting in a culvert and drainage ditch at the Slide Road intersection. Kerr had to lower the grade. A water main was discovered and work was delayed so it could be lowered. Meanwhile, Kerr put his scraper to work to cut a channel for the water main. A State engineer, Mr. Elmer Wright, was also present, and he stepped on a gas meter box in the weeds along the right-of-way. Cope and Wright looked about and saw a gas installation near. So Cope telephoned Kirchoff to inquire whether Pioneer had a line there. He was told that it did. Kirchoff did not know how deep the line was buried, but he said he would come out immediately to check it. He arrived within thirty or forty minutes. By prodding in the ground, Kirchoff located it and determined that it was within the cutting depth of Kerr. So Cope had the scraper cut around the pipe and left dirt over it. Later Pioneer lowered the pipe and the work was completed. Cope then testified, "At that time, I asked him, after we'd found that one, I said, 'Well, do you know of any other think that I might be watching for on this job?' And he said, 'Not as far as I know.'" At this point, Kerr was digging to four feet deep, and Cope said Kirchoff saw that. This occurred about a month before this accident. Cope did not see Kirchoff on the job after that.

On cross examination of Cope, he said that Slide Road intersection is a mile to the northeast of the Doud Switch or Frankfort Road intersection where this accident occurred. A community had developed around Doud Switch which necessitated the gas service. When Cope called Kirchoff, he co-operated with him in every way.

Mr. Kirchoff testified that he went to the intersection promptly. "I dropped what I was doing and got in my car and took a pipe locater and a crowbar and went out to the Slide Road." He located the

pipe for Cope. He emphatically testified that he was not asked any questions at all "about what you had down at the intersection of Frankfort Road and 62." He knew what the company had at that intersection [the intersection where the accident occurred], and did not tell Cope that Pioneer did not have any pipes there.

On cross examination, Kirchoff testified that at Slide Road they showed him what they had found, a changing color of dirt over a ditch line; and "I took a probe bar, probing down the distance of the probe bar, which is 30 inches. When we failed to hit the pipeline, found it was deeper than that, so he [Cope] had his scraper go through it." A deep scrape was taken, and then Kirchoff found the pipe about 8 inches below the surface. Kirchoff further testified as to this Slide Road incident:

"Then there was a conversation relating to other lines in that vicinity of Slide Road. I pointed out where our lines were, where they crossed the railroad, and mentioned our line on the north side of the railroad, I was told they were not doing any construction over there, and I asked specific questions, how extensive was this channel that they were building, how far would it go and where, and he told me that it would parallel the railroad, the highway, the Slide Road intersection, to the lake immediately northeast. At that time I told them that we had an eight-inch line paralleling the railroad right-of-way, highway right-of-way, is a common line. We paralleled that right-of-way from there approximately a mile north; northeast, I should say. And I showed them the valve boxes that were over our valves at the turning point, and I pointed out that we also crossed the highway straight across at the projection of the lines where they were digging the channel."

The State Highway engineer on the project, Mr. Elmer Wright, testified that

he was present during at least a part of the conversation between Cope and Kirchoff. He said the digging at Slide Road was deeper than it was at Frankfort Avenue where the accident occurred. He testified to the discovery of the utility connection. He said Kirchoff came out and located the line. Wright discussed with Kirchoff the direction the line went, that it went toward Lubbock in a northeasterly direction along the right-of-way. It did not go in the direction of Brownfield, toward the intersection where the accident occurred. He did not recall any conversation between Cope and Kirchoff "as to whether there were any other lines that would be in his [Cope's] way in this construction project toward Brownfield." He said that it was possible that a conversation could have occurred which he did not hear.

■ The jury found that Kirchoff failed to disclose the location of the line in question at the time of the Slide Road conversation, and that Kirchoff did not reasonably believe that the Slide Road conversation related to lines in that area. There was no issue submitted as to whether Cope asked Kirchoff if there were other gas lines in the right-of-way in the entire project which Kerr might encounter. The answers are that he did not disclose the location of the line in question and that Kirchoff did not reasonably believe that the conversation related to lines in the Slide Road area. It is our opinion that, viewed in context, Cope's inquiry of Kirchoff was not, as a matter of law, sufficient to raise a duty on Pioneer to point out all of Pioneer's connections or pipelines in the entire four miles of the project on which Kerr was working and might encounter in the entire time it was working on the rather large segment of the highway including the pipe at the intersection in question.

■ As set out in the cases referred to above, where there is an extraordinary use of the surface, as there was here, the initial burden is upon one who excavates or digs up the surface to avoid striking utilities rightfully within a road or to make a reasonable inquiry as to the location of lines which may be encountered so that injury may be avoided. It is our opinion that K & M did not discharge this duty.

The conversation at Slide Road was the only inquiry shown by the record to have been made by Kerr or his agents, and since Kerr proceeded to dig into the road without having ascertained what was in or under it, it is our opinion that, in view of the cases cited above, Pioneer breached no duty toward Kerr or K & M; and that therefore Pioneer is not liable to K & M.

The judgments of the courts below are reversed and judgment is here rendered that Respondent take nothing.