Edward SCHRONK et al., Appellants,

v.

Homer GILLIAM et al., Appellees.

No. 4195.

Court of Civil Appeals of Texas.

Waco.

March 26, 1964.

Rehearing Denied May 7, 1964.

Wm. B. Martin, Tom Beard, Hillsboro, for appellants.

R. A. Kilpatrick, Cleburne, for appellees.

**744** ■ ▬▬▬▬▬▬▬▬▬▬▬▬

WILSON, Justice.

Appellees sued appellants for damage to their lands caused by poison dropped from an aircraft.

The only question in this case is whether it was necessary for plaintiffs to establish negligence as a basis for their recovery of damages to realty. There is no pleading of negligence. No question as to nuisance is presented. The case is not governed by statutes relating to aerial spraying. Texas has not adopted any uniform act governing aeronautics. Stated otherwise, the question is whether defendant is liable for trespass. No complaint was presented in the trial court, and no question is raised here as to sufficiency of plaintiffs' pleading. The only pertinent objections to the charge were that no issues as to negligence were submitted. The question thus narrows to whether the evidence shows an actionable trespass, the jury having made findings on elements of that independent ground of recovery.

All parties concede on argument, and the record reflects that appellants' aircraft was flown over appellees' land. The evidence establishes that the damage was caused when the aircraft deposited a desiccant, poison or other deleterious substance, intended to be used for the spraying of cotton on other lands, on plaintiffs' crops and pasture while it was in flight in air superadjacent to their land. The record is silent as to the transvection altitude.

■ The history of the abandonment or modification of Coke's ad coelum doctrine is traced in Hotchkiss, Law of Aviation, 2d ed., ch. 3; Fixel, Law of Aviation, 3d ed., ch. IV.; Jaffe, 9 Tex.L.Rev. 240; Anderson, Airspace Trespass, 27 Journal Air Law (1960) 341. Whether upon concepts of a public right of freedom of transit through the air, an exercise of national sovereignty to make airspace common domain, an appropriation, a privilege, an easement or some other notion, the early English doctrine that airspace was an appurtenance

to land giving an absolute and exclusive proprietary right to the owner "to the highest heavens" has been repudiated. That exclusive dominion has been qualified to make airspace a public highway. United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206.

■ The common right to that use of airspace is restricted, or the horizontal surface owner's dominion is protected, however, at least to the extent that there is a limit to minimum altitude of flight. Absent legislation, the aeronaut's rights generally terminate at, and the landowner's exclusive dominion extends at least to the altitude of the owner's existing and effective reasonable use of the land. Hotchkiss, Aviation Law, Sec. 22; American Law Inst., Restatement, Torts, Secs. 159, 194; United States v. Causby, above; 2 C.J.S. Aerial Navigation § 5, p. 903; 8 Am.Jur.2d Sec. 5, p. 621. See generally, 99 A.L.R. 176 and supp.; 3 Journal Air Law, 329, 531; Wherry & Condon, 6 Air Law Rev. 113; Anderson, Airspace Trespass, 27 Journal Air Law 341 (1960); Harper, Torts, Sec. 37, p. 74; Prosser, Torts (1955) Sec. 13, p. 60; Harper & James, Torts, Sec. 1.15; 78 Pa.L.Rev. 902; 6 Cornell L. Q. 271; Calkins, Landowner and Aircraft, 25 Journal Air Law 373 (1958).

■ Under this record it may not be said that there is a showing appellants' mere initial entry into the superincumbent atmosphere over appellees' land at an unknown altitude constituted in itself an actionable trespass. Invasion of an interest in the exclusive possession of appellees is not thus shown. If it be assumed that the aircraft, as such, was operated under an abstract privilege or other right to transverse the airspace over appellees' land, that isolated circumstance does not require a holding that the manner in which the present flight was conducted is immune under trespass law.

Comment (f), Sec. 159, Restatement, Torts, as it existed before the Causby decision, read: "A temporary invasion of air

space by aircraft, for the purpose of travel through it or other legitimate purpose, if done in a reasonable manner and at such height as * * * does not interfere unreasonably with the possessor's enjoyment of the surface of the earth and the air space above it, is privileged." Comment (e), however, is: "An *unprivileged* intrusion in the space above the surface of the earth, at whatever height above the surface, is a *trespass*." Sec. 194 also stated similar conditions under which flight could be made without liability for unprivileged entry. Comment (f) thereunder is: "A flight, although for a legitimate purpose, at a proper height and in accordance with all applicable local regulations, in order to be privileged, must be conducted in a reasonable manner. Therefore, a flight at an otherwise permissible height above the surface *conducted in such manner as to be dangerous to the land,* or to persons or things thereon *is not privileged*." Comment (h) under Sec. 158 relating to liability for intentional intrusion on land, concerns invasion by propelling or throwing a thing through the airspace above the land as constituting an actionable trespass.

■ In 1958, after the Causby decision, subd. 2 of section 159 of the Restatement was tentatively re-drafted to read: "Flight by aircraft in the air space above the land of another is a trespass, if, but only if, (a) it enters into the immediate reaches of the air space next to the land, and (b) it interferes unreasonably with the other's use and enjoyment of his land." Tent. Draft No. 9, April 26, 1963.

■ In our opinion, the flight conducted by appellants was not privileged under the existing or re-draft Restatement views; it was not conducted in a reasonable manner; it did unreasonably interfere with appellees' enjoyment of the surface. Under the Causby decision the flight was conducted in such manner as to at least invade the "immediate reaches" of the adjacent atmosphere enveloping plaintiffs' land, in which appellants had no dominant estate or

privilege. Whether the situation is viewed as a wrongful act after rightful entry, or as a trespass ab initio, is not important. The entry of the fuselage, at even a privileged altitude, was accompanied by active and continuous spraying of the poisonous substance which constituted as much a part of the flight as if appellants' aircraft had been dragging a great scythe across the land below it. In our opinion an actionable trespass was established, and no allegation of negligence was required.

We distinguish such cases as Vrazel v. Bieri, Tex.Civ.App., 294 S.W.2d 148, writ ref. n. r. e., holding negligence must be shown, at least on the ground that in them the spray drifted great distances, being carried by air currents; the aircraft did not enter the air space over plaintiffs' land; and the issue of trespass was not presented.

Affirmed.

### On Motion for Rehearing

Appellants now contend that in the absence of a finding that they "entered the air space above the land of the appellees either wilfully or intentionally" a judgment based on trespass is unauthorized. We did not rest liability on the Restatement principle that aeronautics is an extra-hazardous activity. We rested it upon the undisputed fact of an unprivileged entry upon land in exclusive possession, recognizing that in the absence of proof of altitude it could not be said that mere entry across the vertical plane, or boundary of appellees' land by the aircraft alone was an intrusion upon exclusive dominion.

The circumstances in the record make uncontroverted the fact that it was intended the aircraft be flown in the atmosphere over appellees' lands. The evidence shows it was not intended, however, that the foreign substance should be dropped on their lands. This, we assume, is the basis of appellants' stated contention. We have not considered it lightly. It raises a question as to whether there may be an actionable trespass

where there is an unintentional and non-negligent entry under the Restatement view. The intention involved in appellants' contention, however, relates not to a purpose to cause damage, but to make the entry.

Prosser, Torts, 78, says of appellants' contention: "The most significant recent development is the position taken by Restatement of Torts which finds liability for trespass only in the case of intentional intrusions or negligence or some 'extrahazardous activity on the part of defendant.' It is probable that this position will be adopted in time by the courts." In the second edition, p. 75, Prosser traces changes in trespass concepts, and says, "The most important of the trespass rules to survive was that which imposed liability for invasions of property which were neither intended nor negligent." See Harper and James, Torts (1956) Sec. 1.16, p. 46. The Restatement position is now itself in a restless state. See Tentative Re-draft No. 10, Sec. 520a, April 20, 1964. Texas has not yet adopted the original Restatement view.

In Mountain States Tel. & Tel. Co. v. Vowell Const. Co., 161 Tex. 432, 341 S.W. 2d 148, the excavating contractor intended to enter the land *above* which plaintiff's cable was lawfully buried in the driveway under a possessory right which excluded the contractor. The contractor "knew that a cable had been laid" in the driveway, but apparently did not know its depth. An engineer staked the driveway to require a cut of 2.4 feet, but the contractor cut the cable upon reaching a preliminary depth of only 2.2 feet. The Court of Civil Appeals held, 335 S.W.2d 804, that since plaintiff had waived any claim of negligence, recovery could not be based on trespass because the plaintiff "did not plead, prove, or sub-mit issues as to willful or intentional trespass", and that because of failure to "plead and prove a willful or intentional trespass" the judgment was without support.

The Supreme Court pointed to that language, saying the intermediate court seemed "to have taken the position that for the severing act to constitute a trespass Vowell must have actually intended to cut the cable." After stating the "trespass" of common law forms of action based on willful and deliberate acts or negligence was not the "trespass" involved, the Supreme Court held that "[t]he important thing is that a property right was violated": the molesting or severing of the cable, "which gave rise to a cause of action regardless of negligence". The present case is undistinguishable on principle. In neither case did the defendant willfully, deliberately or intentionally invade a property right in the exclusive dominion and possession of the plaintiff. In neither case did the defendant actually intend to inflict the damage. In one case the "scraper was deliberately and intentionally used" in making a cut not intended to invade the property right of plaintiff; in the other an aircraft was intentionally and deliberately used in traversing airspace not intended to violate appellees' surface property rights.

■■ "A trespasser on land" has been defined "as one who, not having title thereto, without consent of the true owner [thereof], makes entry thereon." It is said also that "every unauthorized entry upon land of another is a trespass" and "the intent or motive prompting the trespass is immaterial". McDaniel Bros. v. Wilson, Tex.Civ.App., 70 S.W.2d 618, 621, writ ref. See 21 Tex.L.Rev. 78.[1] Appellants' motion for rehearing is overruled.

1. It may be that a more accurate and consistent characterization of the basis of liability would be that appellees failed to discharge a duty imposed on one who by flying across land makes an extraordinary use thereof, as in the Pioneer Natural Gas Co. v. K. & M. Paving Co., Tex.Sup., 374 S.W.2d 214, 218–219; or that in the exercise of a non-consensual privilege the actor has conducted the flight in an unreasonable manner and interfered unreasonably with the possessor's enjoyment of the surface, as in existing Restatement, Sec. 194. See Tentative Re-draft No. 10, April 20, 1964.