**BELL ATLANTIC–WASHINGTON, D.C., INC., Appellant,**

v.

**NAZARIO CONSTRUCTION CO., INC., Appellee.**

No. 96–CV–495.

District of Columbia Court of Appeals.

Argued Jan. 6, 1998.

Decided Aug. 13, 1998.

---

T. Jay Barrymore for appellant.

Vernon W. Johnson, III, Vienna, VA, for appellee.

Before WAGNER, Chief Judge, SCHWELB, Associate Judge, and GALLAGHER, Senior Judge.

SCHWELB, Associate Judge:

On or about September 21, 1993, employees of Nazario Construction Company, Inc. who were participating in a major excavation and reconstruction project in the area of 32nd and Q Streets in northwest Washington, D.C. drove several "form pins," or spikes, into underground telephone cables owned by Bell Atlantic–Washington, D.C., Inc., and caused damage to the cables. On July 14, 1994, Bell Atlantic brought suit against Nazario, alleging negligence. Specifically, Bell Atlantic alleged in its complaint that Nazario breached its duty of care to excavate in a manner which would avoid damaging Bell Atlantic's clearly marked underground facilities.

Nazario denied that it was negligent, and took the position that it was Bell Atlantic's obligation to ensure that its cables were so located as to avoid damage to them during the excavation project. Nazario expected to call expert witnesses to establish that Bell Atlantic had this duty, and to show that, even if Nazario was negligent, the damage to the cables was the result of Bell Atlantic's contributory negligence.

On March 18, 1997, the case was tried before a judge sitting without a jury. At the conclusion of the plaintiff's case, the trial judge entered judgment in favor of Nazario upon the ground that Bell Atlantic had failed to present expert testimony establishing the applicable standard of care. On appeal, Bell Atlantic contends, as it did at trial, that expert testimony was not required. Concluding that the standard of care required of one in Nazario's position is established by statute and that Bell Atlantic presented evidence that the statute was violated, we reverse.

## I.

Nazario conceded at trial that its employees pounded spikes into Bell Atlantic's cables, which were located about fourteen inches from the surface of the road. The parties stipulated that Bell Atlantic had marked the location of its facilities in the area where Nazario was performing its work. There was testimony that prior to the accident, progress meetings were held between District of Columbia officials, representatives of affected utilities (including Bell Atlantic), and various contractors, including Nazario. A witness for Bell Atlantic testified that the participants discussed, among other subjects, the question whether Bell Atlantic would have to move its cables, and that an unnamed representative of the District of Columbia government advised Bell Atlantic that relocation would not be necessary.

During pretrial proceedings, the parties focused primarily on the amount of damages, and most of Bell Atlantic's evidence at trial related to that issue. Bell Atlantic presented no expert or other testimony to establish the applicable standard of care. At the conclusion of the plaintiff's case, counsel for Nazario asked the court to enter judgment in Nazario's favor because, in counsel's view, Bell Atlantic had failed to prove that Nazario had been negligent. Bell Atlantic's attorney responded that there was no doubt that Nazario caused the damage to. Bell Atlantic's

cables, and that "[t]he duty at the time of digging lies as a matter of law and statute on the party doing the digging and not [on] Bell Atlantic." The judge held that expert testimony was required to establish the applicable standard of care, and granted judgment in favor of Nazario.[1] Bell Atlantic filed a timely notice of appeal.[2]

## II.

■ Bell Atlantic's sole claim in this case is that Nazario was negligent in that it failed to carry out its statutory obligation to plan and carry out its excavation in a manner that avoided damage to Bell Atlantic's cables. "The plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C.1988) (citation and internal quotation marks omitted). The trial judge ruled in this case that, as a matter of law, expert testimony was required to prove the applicable standard of care. We disagree. "Proof of a deviation from the applicable standard of care need not include expert testimony where the alleged negligent act is 'within the realm of common knowledge and everyday experience.'" *Id.* (quoting *District of Columbia v. White*, 442 A.2d 159, 164 (D.C.1982)) (other citations omitted). In the situation before us, the standard of care was established by statute, *see, e.g., Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268, 1273 (D.C.1987), and on these facts expert testimony was unnecessary.

■ The District's Underground Facilities Protection Act (UFPA), D.C.Code §§ 43–1701 *et seq.* (1998), provides that each person responsible for an excavation or demolition operation shall

(1) Plan the excavation or demolition to avoid damage to or minimize interference

1. The judge articulated his decision in the following dialogue with Bell Atlantic's attorney:

 THE COURT: And what is the standard of care that should have been—What is it that they should have done but did not do and what evidence is there?
 MR. BARRYMORE [(COUNSEL FOR BELL ATLANTIC)]: They should have done something to avoid damaging the cable—
 THE COURT: With all deference, what witness testified about what they should have done before damaging the cable?
 MR. BARRYMORE: No witness.
 THE COURT: No one. In order to establish negligence, you [have] got to establish a standard of care. Now, this is not a case in which a jury or I for that matter know what should be done off the top of my head.
 It's not the situation in which many people become knowledgeable and[,] in order to establish the standard of care, then you would have been required to bring in a witness, an expert witness, to show what a prudent and appropriate company would do in these circumstances and then show how or what this company did do and how it breached that standard of care, but I have no idea [what] that standard of care would be here.

 \* \* \* \* \* \*

 The long and short of it is you have totally failed to establish any standard of care[,] and in the absence of a standard of care[,] ... which of course [would] have to be followed by evidence that there was a breach and that the breach injured your client, there's no way in which I can grant a judgment for you.

 I therefore must grant the motion for judgment as a matter of law[,] and that judgment is based not because no reasonable person could find your way, but I[,] having heard the evidence[,] find personally that you have not established the standard of care[,] and [that in] the absence of that finding as to what the standard was[,] and ... the followup findings of duty and breach and damage, I cannot award any judgment.

2. Bell Atlantic's attorney requested leave to reopen his case and to recall one of his previous witnesses and to qualify him as an expert on the standard of care. The trial judge denied the motion, noting, among other things, that Bell Atlantic had failed to list this individual as an expert witness and that "if you had called an expert, I'm quite certain the defendant would have called an equal and opposite re-expert. As you know, it is Newton's 4th law." Bell Atlantic contends that the judge abused his discretion by denying its motion to reopen its case. Because the situation before the court is not likely to be replicated, we do not decide the question whether Bell Atlantic should have been permitted to reopen its case. We note, however, that "[p]rofessionals and practitioners over a broad range of specialties whose knowledge and views were acquired as participants in or as witnesses to [the] occurrences in dispute have been ruled not to be experts for purposes of discovery under Rule 26(b)(4)." *Adkins v. Morton*, 494 A.2d 652, 657 (D.C.1985). It appears that the witness in question was such an expert, and Bell Atlantic therefore was not required to identify him as an expert during discovery.

with underground facilities in and near the construction area;

(2) Maintain a clearance between an underground facility and the cutting edge or point of any mechanized equipment, taking into account the known limit of control of such cutting edge or point as may be reasonably necessary to avoid damage to such underground facility....

D.C.Code § 43–1705(a). The Act further states:

If any underground facility is damaged through the fault of any person, that person shall be liable to the owner of the underground facility for the total cost of the repair or, if necessary, the replacement of the damaged underground facility.

D.C.Code § 43–1707(a). Bell Atlantic contends that these provisions establish the standard of care, and that Nazario deviated from that standard by driving spikes into Bell Atlantic's cables. We agree.

The general rule in this jurisdiction is that where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, unexplained violation of that standard renders the defendant negligent as a matter of law.

*Ceco Corp. v. Coleman,* 441 A.2d 940, 945 (D.C.1982) (citations, internal quotation marks, and italics omitted); *see also Zhou, supra,* 534 A.2d at 1273. Viewing the evidence in the light most favorable to Bell Atlantic, *see Ceco, supra,* 441 A.2d at 944, we are satisfied that by proving that Nazario drove spikes into Bell Atlantic's cables, Bell Atlantic established a *prima facie* case of a violation of the UFPA, and that at the time the trial judge entered judgment, that violation was unexplained.

---

**3.** Although the court based its decision on a theory of trespass, its discussion of the mover's duty to avoid damage to underground cables, and of the requirements of "ordinary prudence and care" in that regard, is equally applicable here.

**4.** In the present case, Nazario was working on a District of Columbia construction project. We

Nazario counters that Section 43–1707(a) refers to damage "through *the fault* of any person," and claims that there was no evidence that Nazario was at fault. Although there is no dispositive District of Columbia precedent on the question whether fault might reasonably be inferred on this record, Nazario's position cannot be reconciled with the case law from other jurisdictions.

In *Frontier Tel. Co. v. Hepp,* 66 Misc. 265, 121 N.Y.S. 460 (Sup.Ct. Erie County 1910), the court was confronted with a factual scenario quite similar to the present one. In that case, the defendant, a house mover, drove an iron spike into the telephone company's underground cables. The telephone company sued the mover for damages. The mover defended upon the ground that he was unaware that the cables were in that location, and that it was the telephone company's responsibility to advise him that they were. There was no applicable statute or ordinance comparable to the UFPA defining an excavator's duty to avoid damage to underground facilities. Nevertheless, applying common law principles, the court decided the issue [3] in favor of the telephone company in a thoughtful opinion from which we quote at length:

We are ... of the opinion that when one like the defendant uses the public streets of a city for his own private purposes,[4] and goes beneath the street surface by excavation or otherwise, the duty rests upon him to fully inform himself as to what lies below, so that he may avoid injury to the property of the city or others rightfully there. The streets of a modern city are so underlaid with pipes and conduits of various kinds necessary to the comfort and welfare of its citizens that one may be required to almost take judicial notice that in digging he may encounter some such pipe or conduit at any point in a street. We have sewers and water pipes, mains

---

discern no basis for concluding that its obligation to avoid driving spikes into Bell Atlantic's cables was affected by this fact. If Nazario breached its statutory duty, it is no defense that a third party may also have contributed to Bell Atlantic's injury. *See, e.g., Hill v. McDonald,* 442 A.2d 133, 137–38 (D.C.1982).

and laterals, steam heating pipes, gas pipes, electric lighting and power lines, telephone and telegraph wires and cables, and all with their necessary branches and connections for service to the abutting owners. When, therefore, one proposes using the public streets for his private purpose, and proposes driving iron spuds or stakes below the surface, ordinary prudence and care dictate that he should inform himself of what lies beneath, so as to avoid injury to public property, or the property of public service corporations. If he fails to do this, he drives his stakes or makes his excavations at his peril.

*Id.* 121 N.Y.S. at 464. In the present case, the parties stipulated that Bell Atlantic had marked the location of its facilities. Nazario having been clearly apprised where the cables were, the court's reasoning in *Frontier Tel. Co.* applies *a fortiori*.

In *Public Serv. Ry. Co. v. Mooney*, 99 N.J.L. 58, 125 A. 328 (Sup.1923), a plumbing contractor dug a trench for the purpose of installing a water pipe connecting an adjacent house to a water main. In doing so, the contractor pierced a concrete conduit containing electric wires belonging to the plaintiff, a trolley car company. There was no plat on file from which the plumber could have ascertained the location of the plaintiff's conduit. The trial court concluded that the plaintiff had failed to prove negligence. As in the *Frontier Tel. Co.* case, there was no applicable statute or ordinance. The Supreme Court of New Jersey, relying heavily on *Frontier Tel. Co.*, ruled for the plaintiff on common law grounds:

> The defendant is a plumber, and had the contract to install the water pipe. He was chargeable with knowledge of the fact that most of our public thoroughfares contain beneath their surfaces gas pipes, water pipes, conduits, containing telegraph, telephone, trolley, electric light wires, etc. One cannot be permitted to shut his eyes to this condition and blindly go on and dig up a street without taking that degree of care necessary to refrain from interfering

with and injuring the property of others.... Conduits are property subject to ownership, and one wrongfully or negligently causing injury is liable.... If a private individual ... makes any excavation in the street, at least ordinary care is required that no injury shall be done to conduits.

*Id.* 125 A. at 330 (citations omitted).

In *Illinois Bell Tel. Co. v. Charles Ind. Co.*, 3 Ill.App.2d 258, 121 N.E.2d 600 (1954), another "common law" case, a construction contractor was installing a sanitary sewer. The contractor's "hoe," or excavating machine, came into contact with and damaged the telephone company's cables. The telephone company sued the contractor for negligence. The contractor defended upon the ground that it had proceeded with the consent of city authorities and that the city had furnished the contractor with a plat which failed to depict the location of the cables. The trial judge found that the contractor was negligent in failing to ascertain where the cables were, but that the telephone company was contributorily negligent by neglecting to make inquiry as to whether excavation was being done, and by failing to advise the contractor of the location of the cables. The trial judge therefore entered judgment for the defendant. The appellate court, after an extensive review of the authorities, including *Frontier Tel. Co.* and *Mooney*, held that

> it was the duty of the defendant to inform itself of the location of plaintiff's property, and the plaintiff cannot be held contributorily negligent as a legal proposition because it did not seek out the defendant and inform it where its conduit and cables were located, nor was it the duty of the plaintiff to check the records of the municipality to ascertain to whom permission had been given to excavate at the place where plaintiff had buried its conduits and cables.[5]

*Id.* 121 N.E.2d at 608. The court thus ruled that the defendant was negligent on facts far less favorable to the plaintiff than those in the present case.

---

5. We express no opinion as to whether, in this case, Nazario has a viable defense of contributory negligence. Nazario has not yet had an op-

portunity to present its evidence on that issue, and the trial judge did not reach it. The question may be pursued further on remand.

More recently, in *GTE North Inc. v. Carr*, 84 Ohio App.3d 776, 618 N.E.2d 249 (1993), the court said:

> There is a positive non-delegable duty imposed on one excavating below ground to inform himself as to whether telephone cables are there so he can avoid damaging them. *See* 74 American Jurisprudence 2d (1974) 339, Telecommunications, Section 144....[6]

\* \* \* \* \* \*

As aforesaid, anyone excavating underground must determine whether there are any phone cables beneath the area he seeks to dig so that he may avoid damaging them. This is particularly true where one is already on notice that underground cables are in the "vicinity." One should not guess, speculate or make judgment calls as to whether an underground cable in the vicinity affects the immediate area sought to be excavated. There is an affirmative duty to ascertain the location of underground cables and one who fails to execute this duty proceeds at one's own risk.

Thus, appellee breached the duty to inform himself whether there were any underground cables at the location he sought to excavate. The evidence in the record clearly indicates that this failure to act was the proximate cause of the fiber optic cable being severed and the injury being sustained by appellant.

*Id.* 618 N.E.2d at 250–51.[7]

In the present case, the trial court's judgment cannot be reconciled with the standard of care established by the UFPA or with the authorities that we have cited from other jurisdictions requiring the exercise of reasonable care. As a matter of law, Nazario was obliged to plan its excavation in such a manner that it would not drive spikes into Bell Atlantic's telephone cables, the location of which Bell Atlantic had clearly marked. The very fact that Nazario drove the spikes and severed the cables makes out, at least, a *prima facie* case that Nazario failed to plan its excavation as required by Section 43–1705, that it was therefore at "fault," within the meaning of Section 43–1707(a), and that the damage sustained by Bell Atlantic was the proximate result of Nazario's .deviation from the applicable standard of care. Accordingly, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*[8]

---

**6.** In the present case, the plaintiff's case did not reflect any "delegation" of Nazario's duty, and it is therefore unnecessary to determine whether that duty was "non-delegable."

**7.** *GTE North* was an especially strong case for the plaintiff because, in that case, the owner of the cable which the defendant damaged had posted warning signs stating that a cable was buried in the vicinity.

**8.** Nazario contends, with some justification, that Bell Atlantic has raised a number of points for the first time on appeal. As demonstrated by the dialogue between Bell Atlantic's attorney and the trial judge, which we have quoted at footnote 1,

*supra,* Bell Atlantic did preserve, if somewhat inartfully, the claim that Nazario had an obligation, as a matter of law, to avoid damage to Bell Atlantic's cables in planning its excavation.

Nazario also asserts that Bell Atlantic's damages were the direct and proximate result of the negligence of the District of Columbia, which allegedly advised Bell Atlantic that Bell Atlantic would not be required to relocate its cables. Nazario may, of course, pursue this claim on remand, but we cannot, on the present record, sustain the judgment on that ground. If Nazario had the obligation to ascertain the location of the cables, and in fact knew of their location, then we discern no reason why the District should have advised Bell Atlantic to move them.