**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**FRIO MATERIALS COMPANY, INC., Appellee.**

**No. 8570.**

Court of Civil Appeals of Texas, Texarkana.

Aug. 29, 1978.

Rehearing Denied Oct. 17, 1978.

C. V. Flanary, Jr., Paris, for appellant.

Hardy Moore, Moore & Lipscomb, Paris, for appellee.

RAY, Justice.

This is a trespass case. Appellant (plaintiff), Southwestern Bell Telephone Company, brought suit against appellee (defendant), Frio Materials Company, Inc., seeking damages for the injury done to its underground conduit and cables. Following a jury verdict in favor of appellee, the trial court entered its judgment accordingly. Appellant has perfected its appeal and submits nine points of error for our consideration.

The damaged cables and conduit in this case had been buried and in place on the right-of-way beneath Loop 286 near Paris, Texas, since 1960. The Texas Highway Department approved the location on July 19, 1960. In 1971, the Texas Highway Department notified appellant that an overpass on the Loop would be built to cross over U. S. Highway 82. In December of 1972, at the request of the Texas Highway Department, the precise location of appellant's buried cables beneath the right-of-way of Loop 286 at its intersection with U. S. Highway 82 was determined and marked with flags by appellant from the manhole on the west side of the Loop to the manhole on the east side of the Loop, and the conduit through which ran the cables was actually exposed at two points on the right-of-way of the Loop. Previously, in July of 1972, the Texas Highway Department revised its construction plans and provided for an expansion of the overpass without notifying appellant. On August 15, 1973, Frio was excavating a pier hole, or wing shaft, at the construction site on the right-of-way of the Loop and drilled into the telephone company's conduit and buried cables and then filled the excavated pier hole with concrete and also filled approximately ninety feet of conduit with concrete. The concrete was poured very shortly after Frio had discovered that its auger had struck the cable and conduit. Appellant proved that it suffered damages in the sum of $39,302.54 which was not disputed by any evidence of probative value.

The telephone company filed its motion for instructed verdict and its motion for judgment notwithstanding the verdict and both motions were denied by the trial court. The jury found that appellant was contributorily negligent and the trial court entered its judgment denying any recovery in behalf of the telephone company.

Appellant has abandoned its claim for damages asserted on the basis of the negligence of Frio and contends that it was entitled to a recovery upon its claim of trespass.

Article 1416, Tex.Rev.Civ.Stat.Ann., provides the following:

"Corporations created for the purpose of constructing and maintaining magnetic telegraph lines, are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters."

Article 1416, supra, has also been held to apply to telephone lines. *Heldt v. Southwestern Bell Telephone Company*, 482 S.W.2d 352 (Tex.Civ.App. Corpus Christi 1972, no writ).

The disposition of this case is controlled by *Mountain States Telephone & Telegraph Co. v. Vowell Construction Co.*, 161 Tex. 432, 341 S.W.2d 148 (1960). In *Mountain States*, supra, the Texas Supreme Court was reviewing a case in which Vowell Construction Company, while preparing an El Paso street for paving, severed a 1515 pair communications cable owned by the telephone company. Mountain States brought a trespass action to recover its damages. The court stated:

"In our opinion, the petitioner telephone company as plaintiff in the trial court pleaded and conclusively established that Vowell Construction Company had committed a trespass for which it was liable in damages."

In determining liability, the court stated the following:

"Here, the scraper was deliberately and intentionally used in making a cut to the designated subgrade. The telephone cable was lawfully in place. The molesting or severing of the cable was a violation of a property right which gave rise to a cause of action regardless of negligence."

In the present case, the conduit and cables were lawfully in place pursuant to Article 1416, supra. The fact that the cables were not in the exact location shown on the plat filed with the Texas Highway Department in 1960, is immaterial since the statute makes no such requirement and appellee made no investigation to determine the location of the conduit and cables. The hole was deliberately and intentionally drilled to its intended depth for the purpose of providing an excavation for a concrete pier and in the process the telephone company's cable was molested and severed which was a violation of a property right which gave rise to the cause of action for trespass. It is immaterial that Frio did not intend to cut the cable. The evidence is clear that Frio intended to set the auger in motion to drill a pier hole to a designated depth. By conducting its drilling operations, Frio became liable for all of the foreseeable injuries and damages that resulted. The telephone cable being lawfully in place constituted a property right. When Frio drilled the hole, it was under a duty to avoid molesting that property right and thus avoid severing the cable. The Texas Supreme Court stated in *Pioneer Natural Gas Co. v. K & M Paving Co.*, 374 S.W.2d 214 (Tex.1963), the following:

"We think it sound, in light of the cases hereinafter discussed, to hold that at least where the activity is in an urban street or road, and where an unusual or extraordinary use of the surface is necessary to unearth the pipeline, and where there is no contract, statute, ordinance, or regulation governing the matter, the initial burden is upon the one who excavates or digs up the surface to avoid striking the line or to make reasonable inquiry as to the location of any lines which might be encountered. The duty of the pipeline operator under these circumstances arises, then, when it is requested to alter its lines or their use, when it is asked for information, or when it is otherwise put on such notice that it is required to take particular action to protect the lives or property of others."

In *Pioneer*, supra, K & M Paving Company sued the gas company for damages to its earth moving machine when the machine struck a gas pipeline buried in a road on the outskirts of the City of Lubbock. The court in effect held that the paving company did its earth moving at its peril and had a duty to determine what was below an urban street or road before digging. It is common knowledge that roads in urban areas are

underlaid with pipes, cables and conduits and a duty rests on the one digging to inform himself of what lies below the surface so that he may avoid injury to the property of others rightfully there.

There is no evidence in this case to indicate that the telephone company knew or should have known that Frio would be drilling a hole in such close proximity to its cables such that a duty would be imposed upon the telephone company to take particular action to protect its property.

We have concluded, and therefore hold, that appellant telephone company established its case as a matter of law by proving that Frio intentionally set its auger into motion and that such auger severed the telephone company's conduit and cables which were lawfully in place and that the damages inflicted were a violation of a property right of the telephone company.

The testimony relative to damages was clear, positive and direct, and was credible and free from contradictions and inconsistencies and though it came from interested witnesses, such testimony was not controverted by anyone shown to have been an expert or one experienced in the costs of repair and replacement of telephone cables and conduits. We therefore hold that appellant proved its damages as a matter of law to be the sum of $39,302.54.

The trial court should have granted appellant's motion for judgment notwithstanding the verdict. It thus becomes our duty to enter the judgment which the trial court should have entered.

The judgment of the trial court is reversed and judgment is here rendered that appellant recover from appellee its damages in the sum of $39,302.54 together with interests and costs.